**HESTER INDUSTRIES, INC., Plaintiff,**

v.

**STEIN, INC., Defendant.**

**Civil Action No. 96–719–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

May 6, 1997.

Robert A. Vanderhye, Robert W. Adams, Nixon & Vanderhye, P.C., Arlington, VA, for Plaintiff.

James H. Laughlin, Jr., Bruce O. Jolly, Jr., Lane & Mittendorf, Washington, DC, Charles H. De La Garza, Joseph A. Uradnik, Arnold, White & Durkee, Minneapolis, MN, Stephen D. Dellett, L. Gene Spears, Arnold, White & Durkee, Houston, TX, for Defendant.

Elizabeth C. Simon, Ron Kamp, FMC Corporation, Chicago, IL, of counsel.

### MEMORANDUM OPINION

ELLIS, District Judge.

In this patent infringement suit, plaintiff, a processor of pre-cooked poultry and meat products, accuses defendant, a manufacturer of industrial appliances, of infringing several claims in two reissue patents covering high humidity steam cookers. In the motion at bar, defendant moves for summary judgment on the question whether the asserted claims of the reissue patents in suit are invalid for failure to comply with the substantive requirements for the reissue of patents found in 35 U.S.C. § 251.

### I.

Plaintiff Hester Industries, Inc. ("Hester") has accused Stein, Inc. ("Stein") of infringing

claims 26 and 59 of U.S. Patent No. Re. 33,510 ("the 510 Reissue") and claims 28, 30, 31, 32, 75 and 76 of U.S. Patent No. Re. 35,259 ("the 259 Reissue").[1] Generally, these patents cover a cooker that employs a spiral conveyor to escort meat products through a housing in which they are cooked using steam. Both patents are reissue patents, which means that they were issued to replace a then-existing patent pursuant to 35 U.S.C. § 251. Specifically, both the 510 and 259 reissue patents replaced Hester's U.S. Patent No. 4,582,047 ("the 047 patent"), which claimed, in part, the invention of a cooker that utilizes two steam sources, one external and one internal, and cooks solely with high humidity steam. The application for the 047 patent was filed in July 1979, and issued in 1986. Two years after the issuance of the 047 patent, Hester applied for a reissue pursuant to 35 U.S.C. § 251, alleging that the claims of the 047 patent had been drawn too narrowly due to attorney error. This application ripened into the 510 reissue patent. Subsequently, a second reissue application was filed for reasons not relevant here,[2] and curiously led to the second reissue patent for the same invention. In any event, following allowance of the second reissue patent, Hester filed this action, accusing Stein of infringing two claims in the first reissue patent and four claims in the second.

Early in the case, in December 1996, Stein moved for summary judgment on the question of patent invalidity. Specifically, Stein argued that the reissue patents in suit are invalid for failure to comply with the requirements of 35 U.S.C. § 251. This motion was denied by Order dated January 3, 1997. At trial, Stein renewed its motion for summary judgment on patent validity.

## II.

The principles governing summary judgment are well settled. Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. A factual question is material if a reasonable trier of fact could find for the non-moving party, in part, on its determination of that question. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether there is a genuine issue of material fact, the evidence is viewed in the light most favorable to the non-moving party, with all doubt resolved in favor of that party. *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1571 (Fed. Cir.1991). But if the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511.

In resolving a summary judgment, due consideration must be given to the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). At trial, patent invalidity must be proven by Stein by clear and convincing evidence. Thus, in this motion, Stein must prove (i) there is no genuine issue of material fact; and (ii) that Stein is entitled to judgment as a matter of law because it has proved, by clear and convincing evidence,

1. Hester is the assignee of both reissue patents in suit, as well as the original patent covering the invention claimed in these reissues, U.S. Patent No. 4,582,047.

2. The PTO's issuance of two reissue patents for the same invention is a curiosity. Indeed, counsel for parties represented at oral argument that they know of no other example of two valid reissue patents for the same invention; it is unique in the history of the patent system. Hester contends that the second reissue, although contrary to PTO rules and procedures, was nonetheless allowed because Stein "sandbagged" the first reissue by a late submission of relevant prior art to Hester. Stein, who was not a party to trial, Stein renewed its motion for summary judgment on patent validity.

these ex parte proceedings before the PTO, disputes this allegation of "sandbagging". Indeed, Stein, as a non-party, was under no obligation to submit prior art to Hester or the PTO with respect to Hester's reissue application. Thus, the "sandbagging" allegation seems unwarranted. Moreover, counsel for Hester represented that the second reissue application contained no additional limitations designed to secure the second reissue over the prior art. Hester, rather, simply submitted additional claims, some of which were allowed. In any event, the propriety of two reissue patents for the same invention is immaterial to the resolution of the instant motion.

that the asserted claims of the reissue patents in suit are invalid.

### III.

The inquiry into compliance with § 251 appropriately begins with the language of the statute, which states, in pertinent part, that:

[w]henever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the patent for reissue.

35 U.S.C. § 251. As construed by the Federal Circuit, this section authorizes a reissue patent in four limited circumstances, namely:

(1) to correct an error in the specification;

(2) to correct a defective drawing;

(3) to narrow the claims of a patent, most often resulting from the belated discovery of partially-invalidating prior art; or

(4) to broaden the claims of a patent, most often resulting from post-issuance discovery of attorney error in understanding the scope of the invention.

*In re Amos*, 953 F.2d 613, 616 (Fed.Cir.1991). Only the fourth circumstance is present here. Hester secured its reissue patents to broaden patent claims.

■ Section 251 requires a patentee seeking reissue to submit an oath or declaration claiming (i) that the patent is defective, and (ii) that the defect or insufficiency in the patent occurred through error without deceptive intent. *Id.* Moreover, § 251 requires that the Commissioner reissue patents only "for the invention disclosed in the original patent", the language of the section specifically prohibiting the introduction of new matter into the reissue application. *Id.* Thus, in

sum, a reissue application may only be granted where:

(1) the original patent has a correctable error;

(2) the error was made without deceptive intent; and

(3) the invention claimed in the reissue patent is fully disclosed in and supported by the specification of the original patent.

In analyzing these factors, it is well-settled that the statutory correction mechanism is "based on fundamental principles of equity and fairness, and should be construed liberally." *In re Weiler*, 790 F.2d 1576, 1579 (Fed. Cir.1986).

Stein does not, for the purposes of this motion, contend that Hester engaged in deception during the reissue application. Rather, Stein attacks the reissue for its failure to satisfy the "error" and "original invention" requirements of § 251. Specifically, Stein's motion presents two principal questions:

(i) whether limitations in the claims of the 047 patent, which were broadened in the reissue patents, are the type of "errors" amenable to correction under § 251, and

(ii) whether the claims of the reissue patents asserted against Stein are fully disclosed in, and supported by, the original 047 patent.

Each is separately addressed.

### A.

The complete realm of "errors" for the purposes of § 251 has not been explicitly defined by Congress or the courts, but the statute and Federal Circuit precedent provide some boundary signposts concerning what constitutes an "error" amenable to § 251 correction. The reissue statute, based on the principles of fairness and equity, is construed liberally "to avoid the forfeiture of substantive rights due to error made without intent to deceive." *Scripps Clinic*, 927 F.2d at 1575. Yet, the Federal Circuit has made unmistakably clear that "not every event or circumstance that might be labeled 'error' is correctable by reissue." *Weiler*, 790 F.2d at 1579. Thus,

[t]he reissue statute was not enacted as a panacea for all patent prosecution problems, nor as a grant to the patentee of a second opportunity to prosecute *de novo* his original application.

*Weiler*, 790 F.2d at 1582.[3]

■ Although the statute itself provides no definition of "error", its history is instructive in this regard. Section 251 replaced the prior reissue statute, 35 U.S.C. § 64 (1946), which authorized the correction of patents that contained "error ... by inadvertence, accident, or mistake, and without fraudulent or deceptive intent." Section 251 eliminated the reference to "inadvertence, accident, or mistake" because those terms were deemed to be encompassed by "error" and, therefore, redundant. *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 882 F.2d 1556, 1565 (Fed.Cir.1989), *cert. denied*, 493 U.S. 1076, 110 S.Ct. 1125, 107 L.Ed.2d 1031 (1990). Yet, this revision did not change the substantive standard for reissue, and "error", for the purposes of the reissue provision, is still interpreted as "inadvertence, accident, or mistake." *Id. (quoting Ball Corp. v. United States*, 729 F.2d 1429, 1435 & n. 9 (Fed.Cir.1984)). The first two of these terms, "inadvertence" and "accident", refer to circumstances arising unintentionally or unconsciously.[4] The third term, "mistake", could be more broadly construed to refer to either an intentional or unintentional error.[5]

In light of the principle of *ejusdem generis*, however, these terms are best construed as requiring an "error" to be made unintentionally in order for that "error" to be eligible for § 251 correction. *See generally, In re Mead*, 581 F.2d 251, 257 (CCPA 1978)(deliberate, conscious choice not an error amenable to correction by § 251).

■ The question presented here is whether the 047 patent limitations sought to be broadened through reissue are the result of an "error" amenable to § 251 correction. Where, as here, no facts material to the patentee's reason for seeking a reissue are disputed, the question whether an "error" has occurred for the purposes of § 251 is a question of law suitable for summary determination.[6] Thus, summary determination is appropriate in this case, given that the record supports only one conclusion concerning Hester's reason for seeking reissue.

■ The circumstances surrounding the decision to seek reissue are undisputed. Charles Elwood Williams, an employee of Hester and the sole named inventor of the 047 patent and the reissue patents in suit, provided the required oath with his application for reissue. According to this oath, Williams and Hester learned of the accused Stein cooker on January 18, 1988, and concluded that the 047 patent should cover such a cooker, notwithstanding the fact that the

---

**3.** Indeed, the Federal Circuit has observed that

> reliance on allegations of inventors' ignorance of drafting and claiming technique and counsel's ignorance of the invention are unavailing. Those allegations could be frequently made, and, if accepted as establishing error, would require the grant of reissues on anything and everything mentioned in the disclosure.... Insight resulting from hindsight on the part of new counsel does not, in every case, establish error.

*Weiler*, 790 F.2d at 1583 n. 4.

**4.** Thus, Webster's Third International defines "inadvertent", in part, as follows

> not turning the mind to a matter: HEEDLESS, NEGLIGENT, INATTENTIVE ... UNINTENTIONAL.

*See* Webster's Third International Dictionary Unabridged, at 1140 (1993). And Webster's defines "accident", in part, as follows

> an event or condition arising by chance or arising from unknown or remote causes ...

lack of intention ... an unforeseen unplanned event or condition.

*Id.* at 11.

**5.** Webster's defines the noun "mistake", in part, as follows

> a misunderstanding of the meaning or implication of something ... a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention: an unintentional error.

*See* Webster's Third International Dictionary Unabridged, at 1446 (1993).

**6.** *See, e.g., Scripps Clinic*, 927 F.2d at 1574 ("Although there were factual aspects debated by the parties, they are not material to the question of the legal adequacy of the patentee's reason for requesting reissue. That is a question of law, and the facts material to that question were not in dispute. The matter could have been, and was, decided summarily."); *see also Mentor Corp. v. Coloplast, Inc.*, 998 F.2d 992, 994 (Fed. Cir.1993).

Stein cooker used a non-steam heat source and only one source of steam in the cooking process. Yet, Hester's present counsel advised Hester that the 047 patent claims, as written, might not cover Stein's cooker. Thus, Williams, by oath, declared that the patent was insufficient because it claimed less than he had a right to claim. Specifically, Williams identified two relevant deficiencies of the 047 patent, as follows:

> (i) that "each of claims 1–14 therein **requires cooking 'solely with steam'** and exposing food products within the cooker housing 'only to said steam as the sole cooking medium' "; and
>
> (ii) that "each of claims 1–14 therein **requires 'two sources of steam** providing said steam to cook the food products, nozzles for releasing steam located inside said housing' "[7]

(emphasis added).

These deficiencies, according to Williams, "arose after [he] executed and filed the original application from which the 047 patent issued" and were caused by "the failure of patent attorney Lawrence R. Brown to appreciate the full scope of [his] invention." To be sure, an attorney's failure to appreciate the full scope of an invention is often amenable to § 251 correction.[8] *In re Wilder*, 736 F.2d 1516, 1519 (Fed.Cir.1984), *cert. denied*, 469 U.S. 1209, 105 S.Ct. 1173, 84 L.Ed.2d 323 (1985). Yet, this record conclusively rebuts

the existence of any attorney "failure to appreciate".

In alleging patent counsel's failure to appreciate the scope of the invention, Williams' oath stands alone, unsupported by any record evidence. Instead, viewed as a whole, the undisputed record provides clear and convincing evidence[9] that the claim limitations did not result from any failure of counsel to understand or appreciate the scope of the invention claimed. This evidence includes the clear language of the patent claims, the prosecution history of the patent, and the absence of any statement from Williams or patent counsel Brown concerning the nature or cause of Brown's failure to appreciate the full scope of Williams' invention.

The 047 patent, originally filed in July 1979, claimed, in relevant part,

> [a] food cooking system **cooking solely with steam** foods such as fish, fowl, meats or produce carried through such cooker on a continuously running conveyor belt, ... and **two sources of steam providing said steam** to cook the food products....

(emphasis added). Thus, the 047 patent was originally limited to an oven cooking solely with steam provided by two steam sources, the two limitations relevant here. These limitations remained throughout nearly seven years of patent prosecution. Indeed, in the

---

7. The reissue oath specifies two further insufficiencies not relevant to the disposition of the instant motion, namely, that the 047 patent requires:

  (i) "a steam generator supplying supplemental steam into said housing at said nozzles located there inside to maintain the atmosphere together with the other steam source at near 100% humidity 100 C, and a pressure above atmospheric"; and

  (ii) "a pool of water within the housing with heating means for boiling the water to create steam."

8. Indeed, the most common defect corrected by a broadening of the claims is an attorney's failure to appreciate the full scope of the invention. *In re Wilder*, 736 F.2d 1516, 1519 (Fed.Cir.1984), *cert. denied*, 469 U.S. 1209, 105 S.Ct. 1173, 84 L.Ed.2d 323 (1985). And in this regard, it matters not whether this failure could have been avoided "at the time of prosecution with a more thorough patentability search or with improved

communications between the inventors and the attorney...." *Id.* at 1519.

9. The "clear and convincing" burden of proof derives from the statutory presumption of validity of duly issued patents. *See Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1139 (Fed.Cir. 1985). This presumption extends to reissue patents. Indeed, Federal Circuit precedent suggests that the burden of proving invalidity is "made heavier" by reissue. *Id.* (citing *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555 (Fed.Cir.1985)). And, as the Federal Circuit has further observed, the statutory presumption "derives in part from recognition of the technological expertise of the patent examiners." *Feil*, 774 F.2d at 1139. In this case, it is unclear what, if any, role the examiner's technological expertise played in determining whether the putative claim deficiencies were caused by "error". In any event, the analysis here proceeds by giving effect to the presumption that the claims of the reissue patents in suit are valid.

final version of the 047 patent, this claim not only requires "cooking solely with steam" and "two sources or steam", but reiterates the importance of steam-only cooking by stating that steam is "the sole cooking medium." [10] Significantly, the relevant limitations did not arise from patent counsel's drafting of a highly technical or difficult aspect of a complex invention. To the contrary, the limitations arose from the insertion of simple, straightforward language that is featured prominently in the patent. This factor alone belies any assertion that poor communication or a misunderstanding caused patent counsel's failure to appreciate the full scope of the claimed invention. To the contrary, the claim language leads to the inescapable conclusion that counsel and inventor deliberately chose the scope of the invention, and that this scope was limited to ovens cooking solely with steam from two steam sources.

Any failure of patent counsel to appreciate the full scope of the claimed invention is further belied by the prosecution history of the 047 patent. Throughout almost seven years of Patent and Trademark Office ("PTO") actions, rejections, and appeals, the limitation to steam only cooking from two steam sources remained. Indeed, Williams and Hester emphasized the importance of using two steam sources in no fewer than five PTO pleadings.[11] And they did the same with respect to the importance of cooking solely with steam in no fewer than six PTO pleadings.[12] The record makes unmistakably

clear that these repeated emphases were not incidental or offhand, but rather reflect the inventor's and counsel's clear understanding of the centrality of steam only cooking from two steam sources to Williams' invention.

Illustrative of this is the response of Hester and Williams to PTO actions rejecting, as obvious, the invention claimed in the 047 patent application. In a PTO Action dated February 6, 1980 concerning the application that ripened into the 047 patent, the PTO examiner rejected claims 1–5 in the application, pursuant to 35 U.S.C. § 103, "as obvious over Vischer, Jr. in view of Jourdan." The examiner explained:

> Vischer, Jr., teaches steam cooking of foods being conveyed through said cooker while spraying food with steam. Jourdan teaches steam cooking of food in a cooker employing a pool of water within the base or housing with means for heating said water. To provide Vischer, Jr., with two sources of steam would be obvious if so desired in view of Jourdan.

In his final rejection dated September 17, 1981,[13] the examiner reaffirmed his position on obviousness, citing new examples of prior art and stating:

> Claims 1, 5, 11 and 12 are rejected under 35 U.S.C. § 103 as being obvious over Wilson and Hice in view of Farkas. The patent to Wilson discloses the concept of a chamber ... having two cooking sources steam 56b and steam from water "pool" W

---

**10.** As amended, claim 1 of the 047 patent reads, in relevant part:

[a] food cooking system **cooking solely with steam** foods such as fish, fowl, meats or produce carried through such cooker on a continuously running conveyor belt, ... **means passing said conveyor belt through said housing to expose food products within the cooker housing only to said steam as the sole cooking medium,** and **two sources of steam providing said steam** to cook the food products..
(emphasis added)

**11.** See, e.g., Applicant's Brief on Appeal of the Examiner's Rejection of Claims dated September 17, 1981, at 13 (December 22, 1981) ("Two diverse steam sources are claimed, namely—a steam generator with nozzles—and—a pool of boiling water—.... [T]he synergy of these two interacting steam sources is novel and nowhere suggested in any of the cited art.").

**12.** See, e.g., Applicant's Response to Final Office Action dated September 17, 1981, at 3 (November 9, 1981) ("[Prior art] heats the products in water ... and in no way is limited to the claimed steam as the sole or critical source.... The claimed invention of claim 1 conversely has exposure of food only to steam, a novel feature not in a single one of the references applied.").

**13.** A final rejection was initially issued on July 9, 1980 and Hester appealed to the Board of Patent Appeals. Subsequent to the filing of Hester's appeal brief, the examiner reopened prosecution of the patent with an Office Action dated March 17, 1981. This reopened proceeding was terminated on September 17, 1981 when a second final rejection was issued. This second final rejection was reversed by a decision of the Board of Patent Appeals dated June 21, 1985, after a successful appeal by Hester.

heated by 56a. The fact that the water in pool $W$ is heated at about 212° ... steam would be inherently given off. The patent to Hice discloses the concept of a[sic] above atmospheric cooking arrangement wherein cooking is performed in a complete gaseous environment [sic], with steam being provided by a water pool and a second inlet for a pressure source at 26.

Thus, the examiner maintained throughout the 047 patent prosecution that the use of steam in the oven invented by Hester and Williams added nothing to the prior art that was not obvious.[14]

In response to the various actions by the examiner, Hester and Williams consistently asserted the unique nature of their invention, referring repeatedly to the novelty of cooking solely with steam from two sources of steam. Thus, on appeal from the examiner's first final rejection on the basis of obviousness,[15] Hester and Williams asserted that the examiner erred in concluding that the 047 patent application was obvious in light of Vischer and Jourdan, stating:

[t]he primary reference Vischer cooks with IR radiation not steam. Clearly the claimed feature of cooking *solely* with steam is directly contrary to the teaching of the Vischer patent, which could never make obvious any process or equipment cooking *solely* with steam as claimed. Thus, this is an improper reference under 35 U.S.C. § 103, unless another reference explicitly teaches replacement of the IR in Vischer, Jr. with a steam source, which Jourdan does not.

(emphasis in original).[16] Further, in response to the examiner's March 17, 1981 action which reopened the 047 patent prosecution, Williams and Hester reemphasized steam as the sole cooking medium, amending claim one to read, in relevant part:

means ... to expose food products within the cooker housing *only* to said steam *as the sole cooking medium,* and two sources of steam providing said steam to cook the food products.

(emphasis in original).[17] In explaining the motivation for offering this amendment, Williams and Hester stated:

[c]laim 1 is amended to clarify the constituency of the cooking medium.... Note therefore that at least two structural distinctions are present in claim 1 not in Wilson, namely (1) steam is the sole cooking medium whereas Wilson dunks the food into the water W, and (2) water pool is boiled to produce a steam source.

Applicant Response to Office Action of March 17, 1981 (April 20, 1981). And yet again, in response to the second final rejection of September 17, 1981, Hester and Williams argued that:

[i]n the 35 U.S.C. § 103 rejections the Examiner is still failing to find art pertinent to the claimed combination of interacting elements.... **The art just simply fails to show ... using ... solely steam in the cooking** for efficient energy transfer to the food but more importantly for preventing the drying out with dry air or gas roasting or washing off of food juices and essences with water as they are cooked and transported.... **The claims are explicit. Thus, claim 1 defines clearly—exposing food products within the cooker housing only to said steam as the sole cooking medium—. All the references cited (Wilson, Hice and Farkas)**

---

14. *See also* Examiner's Answer to Applicant's Brief on Appeal (August 8, 1982) ("[Claim] is obvious since Hice food product ... is not submerged in water and his statement that the food is cooked by steam, it is obvious that one source of steam in Fig 1. comes from the heated water pool ... and the heating means can take the form of steam.").

15. As discussed *supra* note 13, two final rejections were issued by the Examiner in the 047 patent prosecution.

16. *See also* Applicant's Amendment and Response to Office Action mailed February 6, 1980

(April 28, 1980) ("[C]ooking necessarily is done by infra-red in Vischer and the steam is primarily for the purpose of preventing the food from drying out because of the dry IR heat. The cooking could not be done without the IR rods. This principle is completely different from applicant's invention where the claims define cooking *solely* with steam.")(emphasis in original).

17. This emphasis indicates the language added by way of amendment to claim one in the patent application.

**would need be change to something they are not to do this.**

Applicant's Response to Final Office Action dated September 17, 1981 (November 9, 1981) (emphasis added).[18]

Protestations regarding the novelty of steam-only cooking from dual steam sources were unable to sway the examiner, thus, Hester and Williams appealed the examiner's repeated obviousness rejection of Williams' claimed invention. By Decision dated June 21, 1985, the Board of Patent Appeals reversed the examiner's final rejection of the 047 patent claims, concluding that "there is insufficient evidence to warrant a conclusion of obviousness within the meaning of 35 U.S.C. § 103." Specifically, the Board concluded that:

> no suggestion in the combined teachings of the references ... would have led the ordinary skilled worker in the art to an apparatus **utilizing steam as the sole cooking medium;** [and] **utilizing two separate sources of steam,** one of which includes a pool of water in the cooking chamber with means for boiling the water ... While Wilson arguably discloses a dual steam supply ... the reference clearly employs, and in fact requires water as a cooking medium.

(emphasis added). Thus, the examiner's obviousness rejection was reversed on the grounds argued repeatedly by Hester and Williams throughout the prosecution of the patent, namely, that an oven cooking solely with steam from two steam sources was a novel, non-obvious invention in light of the prior art. Williams' and Hester's representations throughout the prosecution of the 047 patent refute any conclusion that the limitation of the 047 patent to ovens cooking solely with steam from two steam sources resulted from patent counsel's failure to appreciate the scope of Williams' invention.

Finally, the record contains no evidence concerning the cause or nature of the failure

of patent counsel Brown to appreciate the full scope of Williams' invention. Significantly, no declaration from Brown was submitted in the reissue proceedings or in this matter. And while Williams' reissue oath invokes the mantra of counsel's "failure to appreciated", Williams offers no explanation as to why Brown erroneously believed that cooking solely with steam from two steam sources were limitations on the claimed invention. Instead, the oath includes only an unsupported, conclusory, hearsay statement concerning the state of Brown's understanding.

■ While an attorney's failure to appreciate the full scope of a claimed invention is an "error" amenable to correction pursuant to § 251, the record is pellucidly clear that no such failure to appreciate infected the prosecution of the 047 patent claims. Williams' unsupported allegation of attorney failure in the reissue oath is wholly unpersuasive when viewed in light of the 047 patent claim language and prosecution history. This does not mean that an inventor must, in every case, obtain corroboration from patent counsel to invoke attorney error for the purposes of § 251. In certain circumstances, the nature and cause of an "error" may be evident from the "error" itself. Yet, if courts are to define the subset of patent prosecution problems amenable to § 251 correction, the nature of an attorney's failure in patent prosecution must be ascertained. And this is especially so where, as here, an allegation of attorney error is wholly unsupported and overwhelmingly contradicted in the record. Accordingly, while an attorney's failure to appreciate the scope of a claimed invention is an "error" amenable to correction pursuant to § 251, no reasonable trier of fact could find such a failure on the facts of this case.

Broadening reissues are not limited to those circumstances discussed in *Wilder*, 736 F.2d at 1519, in which an attorney fails to appreciate the scope of a claimed invention. Rather, such reissues can extend to circum-

---

**18.** Further in this Response, Williams and Hester reiterate the centrality of steam only cooking to their invention, stating that

> Farkas et al. heats the products in water ... and in no way is limited to the claimed steam as the sole or critical source.... The claimed

invention of claim 1 conversely has exposure of food only to steam, a novel feature not in a single one of the references applied.

Applicant's Response to Final Office Action dated September 17, 1981, at 3 (November 9, 1981)

stances where a claim is drawn too narrowly because of an "error" which, while not specifically discussed in *Wilder*, is otherwise the result of "inadvertence, accident, or mistake." And such "error" can include errors of law. *See, e.g., Scripps,* 927 F.2d at 1575 ("[errors of law] not excluded from the class of error subject to correction in accordance with the reissue statute"). Yet, no other such "errors" were asserted by Hester and Williams, nor does the record reflect any "error" of law or understanding resulting in the 047 patent limitation. To the contrary, the record points persuasively to the reason for the reissue sought by Hester and Williams: hindsight inspired by the accused Stein oven. And, in the facts of this case, this reason is not an "error" amenable to § 251 correction.

■ The plain language and prosecution history of the 047 patent, as recited above, reflect a deliberate, intentional choice by Hester and Williams to limit the claims of the 047 patent to ovens cooking solely with steam from two steam sources. In light of the Stein oven, it is understandable that Hester regrets this choice. But this is classic hindsight, and "[i]nsight resulting from hindsight on the part of new counsel does not, in every case, establish error." *Weiler,* 790 F.2d at 1583 n. 4. Otherwise, reissues could be granted on anything and everything mentioned in the disclosure, a result neither intended nor permitted by § 251. *Id.* In this case, reissue provided Hester an opportunity to prosecute, *de novo,* patent claims issued after nearly seven years of PTO actions in order that those claims cover ovens with characteristics repeatedly distinguished and disclaimed in the PTO. To allow reissue in these circumstances is inconsistent with the *ejusdem generis* interpretation of § 251, which requires an "error" to be inadvertent and unintentional. On this record, the 047 claim limitations broadened through reissue were clearly neither inadvertent nor unintentional. Thus, as a matter of law, Hester's reason for seeking reissue is legally inadequate.

This conclusion, compelled by the statute's language and consistent with Federal Circuit precedent, is also supported by the policies served by the reissue statute. Section § 251 serves to protect a patentee against the forfeiture of patent rights, *see Scripps Clinic,* 927 F.2d at 1575, not to provide a mechanism by which a patentee, dissatisfied with the decisions she made in a patent's prosecution, can return to the PTO for another bite at the apple. *See, e.g., Weiler,* 790 F.2d at 1582 ("reissue statute was not enacted ... as a grant to the patentee of a second opportunity to prosecute *de novo* his original application"). Significantly, the denial of a reissue here would not have resulted in a forfeiture of Hester's patent rights, but merely would have confined Hester to the invention claimed through the deliberate and intentional prosecution of the 047 patent, namely, an oven cooking solely with steam from two steam sources. There can be no doubt that the universe of circumstances amenable to § 251 correction is expansive, but it must have limits. And if this case is not beyond those limits, then it is difficult to imagine where the boundaries might lie. Accordingly, the reissue of the asserted claims in the reissue patents was improperly granted and those claims are, thereby, invalid.

### B.

Given the absence of "error" amenable to § 251 correction, it is unnecessary to reach Stein's further contention that the asserted claims of the reissue patents cover an invention not disclosed in the 047 patent. Nevertheless, the "original invention" requirement of § 251 does provide an alternative basis for concluding that the reissue of the asserted claims was improper and that these claims are invalid.

■ The essential question concerning compliance with the "original invention" requirement of § 251 is:

> whether one skilled in the art, reading the specification, would identify the subject matter of the new claims as invented and disclosed by the patentees.

*Amos,* 953 F.2d at 618. It is well-settled that an inventor need not have the subjective intent to claim the broadened invention for a reissue to be appropriate. *See Scripps,* 927 F.2d at 1575. But reissue does require an "objective" intent manifested in the original patent. *Id.* In other words, looking at the claims, drawings, and specifications of the original patent, a person with ordinary skill in the art must be able to conclude that the inventor could have claimed the new subject

matter in the original application. *See Amos*, 953 F.2d at 618. "Could have claimed" does not mean that a claim is merely indicated or suggested by the specification. To the contrary, the proper standard requires the specification to have been capable of supporting all of the elements of the new subject matter had that matter been included in the original patent. As the Supreme Court observed more than a half century ago:

> it is not enough that an invention might have been claimed in the original patent because it was suggested or indicated in the specification. It must appear from the face of the instrument that what is covered by the reissue **was intended to have been covered and secured by the original.**

*U.S. Industrial Chemicals v. Carbide & Carbon Chemicals Corp.*, 315 U.S. 668, 676, 62 S.Ct. 839, 844, 86 L.Ed. 1105 (1942)(emphasis added).[19]

The 047 patent claims cover an oven cooking solely with steam provided by two steam sources. Indeed, this fact is conceded by Hester, and these limitations were a principal reason why Hester and Williams sought reissue. The common denominator of the several claims of the reissue patents asserted by Hester against Stein, and the relevant material change from the 047 patent, is the absence of the limitations to ovens that (i) cook solely with steam, and (ii) have two steam sources.[20] Thus, the question presented here is whether the 047 patent manifests an objective intent to cover ovens that utilize heat sources other than steam, and have less than two steam sources. If not, the reissue impermissibly includes new subject matter, and the claims covering this subject matter are invalid.[21]

It is worth noting that the search for support may well be a less rigorous inquiry where the erroneous limitation in the patent involves an element less central to the claimed invention.[22] For example, if the 047 patent required a steel oven housing, and the reissue sought to include housings made of aluminum or other materials that do not alter the utility of the cooker, specification support for the new materials covered might be provided by the absence of an emphasis on "steel" in the specifications, and the incidental nature of this element of the claim. Yet, where, as here, the reissue seeks to broaden the claims to cover a central element in a manner specifically disavowed in the original patent,[23] the specifications should make it clear to one with ordinary skill in the art that those elements are objectively intended by the specifications, notwithstanding the claims' language.

Hester contends that the 047 patent application manifests an objective intent, clear to someone with ordinary skill in the art, to claim ovens with a non-steam heating element. Assuming, *arguendo*, that a patent's specifications can manifest, to someone with ordinary skill in the art, an intent to claim an invention specifically disavowed in the patent's claims, the 047 patent specifications clearly do not do so. It must appear, "from the face of the instrument", that the 047 patent covers ovens using steam and non-steam heating elements. *U.S. Industrial Chemicals*, 315 U.S. at 676, 62 S.Ct. at 844.

---

19. As discussed *supra*, the "intent" required by the Supreme Court is an objective intent, as disclosed on the face of the patent, not the subjective intent of the inventor. *See Scripps*, 927 F.2d at 1575.

20. The reissue also sought to correct two further insufficiencies relating to requirements concerning (i) the humidity and temperature maintained in the oven; and (ii) a pool of water within the housing to create steam. *See supra*, note 7. The propriety of these corrections are not challenged by Stein, and are not material to the resolution of the instant motion.

21. The 047 patent has only one independent claim, claim 1, that includes both limitations relevant to Stein's motion for summary judgment. Thus, if the elimination of these limitations results in impermissible new matter, then any reissue claim without these limitations was improperly reissued and is therefore invalid. All of the reissue claims here asserted omit the relevant limitations.

22. The centrality of steam-only cooking to the invention covered in the 047 patent is clear from the prosecution history of the 047 patent, which is replete with comments concerning the uniqueness of an oven cooking solely with steam. *See supra*, notes 10–18 and accompanying text.

23. The language "solely with steam" disavows coverage of an invention cooking, at least in part, with heating elements other than steam.

It is not enough that a person with ordinary skill in the art could conclude that Williams could have claimed a cooker that utilized steam in conjunction with another heating element had he chosen to do so in his original patent application. Nor is it enough, as the patent examiner evidently concluded in considering the propriety of the second reissue application, that "the claims **seem to be for the same thing** as in the original patent as well as the first reissue patent." (emphasis added). It must appear, to someone skilled in the art, that the 047 patent did, in fact, disclose a cooker utilizing non-steam heating elements. *Id.*

Nowhere in the 047 patent claims or specification is there a suggestion that meats cooked in the claimed invention could be cooked with a heat source other than steam. Indeed, the specifications of the 047 patent, including its claims, drawings, and preferred embodiment, all manifest the centrality of a dual steam system providing steam-only cooking. This conclusion is confirmed by the representations of the inventor of the 047 patent, Williams; an individual with ordinary skill in the relevant art. In PTO filings on the application leading to the 047 patent, Williams repeatedly stated that his invention and disclosures covered only an oven cooking solely with steam. For example, in a pleading responding to the examiner's final rejection of claims on the basis of obviousness, Williams states, in part:

> it has been **stated in applicant's [Williams']** specification and record that the invention objectives and problems solved are unique—namely, (1) very high energy efficiency attained by **solely steam heat interfacing with the food** . . . .

*See* Applicant's Response to Final Office Action dated September 17, 1981, at 5 (Novem-ber 9, 1981) (emphasis added); *see also, supra,* notes 10–18 and accompanying text. Thus, Williams' own PTO representations reflect the opinion of one skilled in the art that the 047 patent discloses an oven cooking solely with steam.[24]

The absence of any mention in the 047 patent and its specification of any mode of cooking beyond steam-only cooking, combined with Williams' opinions expressed in the PTO proceedings, clearly and convincingly demonstrate that the 047 patent does not disclose the enlargement of coverage allowed in the reissue. Hester attempts to create an issue of fact through the submission of the sworn declaration of an expert witness, Dr. Terry Titus, who stated that the patent specifications of the 047 patent would convey to a person with ordinary skill in the art that the 047 patent supports the broadened reissue claims. Because this declaration is conclusory, and not sufficiently probative of the relevant issues, it does not create a material issue of fact on which a reasonable trier of fact could find that the 047 patent discloses an oven cooking with non-steam heat.[25]

Titus' declaration reveals that he reviewed the claims of the reissue patent and compared them with the 047 patent specifications, finding support for the asserted claims in those specifications. Yet, Titus' testimony is not focused on the relevant inquiry and thus, his conclusions are largely irrelevant to the determination of the instant matter. Titus looked at each of the asserted claims, to determine if they had support in the specifications of the 047 patent. But the broadening of the 047 patent was accomplished by removing prior restrictions, not by adding additional language to the claims. In these circumstances, there will always be support

---

**24.** In this respect, it is worth noting that there is some overlap in the evidence relevant to the "error" requirement, discussed in section III–A, and the "original invention" requirement. Thus, in the instant case, the absence of any disclosure of an oven using a non-steam source of heat to cook food products reinforces the conclusion that patent counsel did not fail to understand the full scope of the claimed invention while prosecuting the 047 patent. Thus, the 047 specifications do not disclose a broader invention that patent counsel failed to comprehend or understand. To the contrary, those specifications disclose precisely the invention covered by the 047 patent

claims prosecuted by Hester, Williams and Brown in the original application.

**25.** *See, e.g., Union Carbide Corp. v. American Can Co.,* 724 F.2d 1567, 1572 (Fed.Cir.1984) ("[Expert] affidavit expressed no more than an unsupported conclusory opinion which ignored, rather than conflicted with, the evidence of record. Thus, no genuine issue of material fact was raised by appellant."); *see generally Duvall v. Bristol–Myers–Squibb Co.,* 103 F.3d 324, 331 (4th Cir.1996) (holding conclusory allegations were insufficient to create material issue of fact).

in the specifications for the language of the broadened claim. This proposition is illustrated by the facts of this case.

The 047 patent claims are limited to ovens cooking "solely with steam." To enlarge these claims to cover ovens utilizing non-steam heat, Williams could amend the claims in one of two ways, namely, (i) by specifying other ovens to which coverage is explicitly extended, i.e., gas and steam, infra-red and steam, etc.; or (ii) by replacing "solely" with "partially", so that the claims would now cover an oven cooking "partially with steam". Both amendments require that coverage of ovens using non-steam heat be disclosed objectively in the 047 patent's specifications. Titus' analysis is only probative if the first amendment approach is taken. In that event, Titus' approach would compare the enlargement of coverage expressed in the reissued claims with the relevant specification. But where, as here, the second approach is taken, Titus' conclusion has no probative value. Any system that cooks "solely" with steam also cooks in part with steam. Thus, Titus' declaration only recites the obvious, i.e., that support in the specifications for a claim's requirements will also support a claim with a subset of those requirements. In contrast, the relevant question for a valid reissue is not whether the specifications support the claim language, but whether these specifications, viewed by one with ordinary skill in the art, disclose the new subject matter covered by that language. The Titus declaration is silent on that issue.

Nowhere does Titus match up specifications in the 047 patent to an invention with non-steam heating elements. In a chart attached to his declaration, titled "Example Specification Support for Asserted Claims", Titus addresses the non-steam heating element in only one respect. In addressing claim 75 of the 259 reissue, Titus confronts the claim of a cooking system "including a heat source in addition to said steam providing means, said additional heat source introducing additional heat into said housing for heating and at least in part cooking said

products." Thus, the issue of specification support for an extra heating element, not expressly limited to steam, is presented squarely. But the only example of specification support indicated by Titus is that "[f]igure 1 [of the 047 patent] shows a heater 41 that introduces additional heat into housing 16." This heater 41 is part of the boiler on the floor of the oven that heats a pool of water to provide the internal source of steam. Thus, the specification support indicated for a second heating element is specifically for a steam producing heating element, and neither Titus nor the specification demonstrate that this disclosure covers non-steam heat.

In sum, the Titus declaration asserts only the obvious fact that an invention cooking solely with steam, a fortiori, cooks in part with steam. Thus, this declaration is not probative of the relevant issue, and does not create a factual issue material to the question whether the reissue patents in suit improperly cover new matter. See, e.g., Union Carbide, 724 F.2d at 1572. In the final analysis, the undisputed material facts include (i) the complete absence of any disclosure in the patent of cooking with non-steam heating elements, (ii) the centrality of steam only cooking in the specifications and claims of the 047 patent, and (iii) Williams' representations concerning the scope of the invention disclosed in the 047 specifications made during the PTO proceedings. Although a close question, in the circumstances of this case, these undisputed facts clearly and convincingly demonstrate that the reissue patent claims indeed cover new matter not covered by the 047 patent, namely, ovens cooking with steam and a non-steam heating element.[26] Accordingly, the asserted claims of the reissue patent were issued contrary to § 251's command that "[n]o new matter shall be introduced into the patent for reissue" and are invalid.

The asserted claims of the reissue patents in suit were reissued in contravention 35 U.S.C. § 251 and, thus, Stein's motion for summary judgment on the question of the validity of the asserted claims of the reissue

26. Given that the asserted claims of the reissue patents contain impermissible new matter because they cover ovens using non-steam heating sources to cook products, it is not necessary to reach the question whether the 047 patent dis-

patents is granted. As there can be no infringement of these invalid claims, plaintiff's cause of action must be, and hereby is, dismissed.

An appropriate Order has entered.

The Clerk is directed to send copies of this Memorandum Opinion to all counsel of record.

closes the invention of an oven with one steam source to one with ordinary skill in the art.