### In re James R. AMOS, Chester K. Greathouse and David S. Riddle.

#### No. 91–1298.

United States Court of Appeals, Federal Circuit.

Dec. 31, 1991.

Marvin Moody, of Hill, Van Santen, Steadman & Simpson, Chicago, Ill., argued, for appellants.

Lee E. Barrett, Associate Sol., Arlington, Va., argued, for the Commissioner of Patents and Trademarks. With him on the brief was Fred E. McKelvey, Sol.

Before MAYER, LOURIE and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

James R. Amos, Chester K. Greathouse, and David S. Riddle (collectively, "patentees") submitted an application for a broadened reissue of U.S. Patent No. 4,610,582 ("582 patent"). New claims 10 through 12 were finally denied after appeal to the Board of Patent Appeals and Interferences ("Board") of the U.S. Patent and Trademark Office ("PTO") because the "failure to claim the subject matter of claims 10 through 12 was not the result of the 'error' required by 35 USC 251" since the "objective intent of the patentees" had been to claim only the subject matter in the already issued claims. *Ex parte Amos*, No. 90–3019, slip op. at 8 (BOPAI Feb. 27, 1991). We reverse because the objective intent of the patentees cannot, alone, form the basis for a denial of reissue claims.

## I

The 582 patent, which issued on September 9, 1986, claims a set of rollers mounted to hold down a workpiece laid upon a moving table until the end of the table is reached, whereupon the rollers lift away from the table surface. The rollers are designed to lift away so that they cannot fall off the end of the table. 582 patent, col. 1, ln. 15–28, col. 4, claims 1–9. The specification contemplates that lifting will occur automatically:

> As the rollers approach the end of the table travel the outside roller is raised either mechanically by the roller cams or electronically by the computer controlling the router. This action prevents the roller from falling off the table and then being damaged as the table moves back against the outside roller.

582 patent, col. 3, ln. 61, col 4, ln. 2 (reference numbers deleted).

The original claims were not directed to the alternative of using a computer to control the lifting of the rollers. Less than one year after issuance and thus within the statutory time permitted for broadened reissue, the patentees filed a declaration with the PTO that they believed "the original patent to be through error, without deceptive intention, wholly or partly inoperative and invalid for the reason that we claimed less than we had a right to claim in not including claims of the scope of newly submitted claims 10, 11 and 12 which are directed to the concept of controlling the rollers and clamps by the computer." The examiner objected to the declaration because the patentees had not "specif[ied] the errors relied upon, and how they arose or occurred" as expressly required by 37 C.F.R. § 1.175(a)(5) (1988). The Manual of Patent Examining Procedure, at § 1414.03 illustrates the scope of the regulatory provision, by stating, in part:

> It is particularly important that the reissue oath or declaration specify in detail how the errors arose or occurred. . . .
> If the reissue oath or declaration does not particularly specify "how," i.e., the manner in which the errors arose or occurred, the Office will be unable to adequately evaluate reissue applicant's statement in compliance with § 1.175(a)(6) that the "errors arose 'without deceptive intention' on the part of the applicant"; see § 1414.04.

Thereafter, the patentees submitted a supplemental declaration which, in pertinent part, averred:

How this error arose is as follows. Due to mistake and inadvert[e]nce during the preparation of the original application which resulted in [the 582 patent], the attorney who drafted the original claims did not include due to oversight any claims to the combination of the computer for the router which may be connected to control the rollers and the clamps to automatically release them. . . .

After September 9, 1986 when U.S. Patent issued, the inventors asked for an opinion as to whether the allowed claims in U.S. Patent covered a combination for a computer for router which may be connected to control the rollers and the clamps to automatically release. As soon as such request was received, the attorney for applicants studied the issued claims of [the 582 patent] and gave the opinion to the inventors that such combination of the computer was not covered by the issued claims. The inventors then instructed the attorney to prepare and file this reissue application with claims to the computer embodiment.

Supplemental Reissue Declaration at ¶ 4 (reference numbers deleted).

Nonetheless, the examiner finally rejected claims 10–12 because the declaration failed "to particularly specify how the errors relied upon arose or occurred, as required under 37 CFR 1.175(a)(5)." Office Action in U.S. Application Ser. No. 056,784 from PTO Examiner to the patentees (Oct. 17, 1988) at 2. Furthermore, the examiner rejected the claims because they were not "for the same invention as that disclosed as being the invention in the original patent," asserting that this was required by 35 U.S.C. § 251. The examiner stated that there was no "evidence that applicant considered the use of the router computer to control the rollers and the clamps to be their invention." *Id.* (citing *In re Mead,* 581 F.2d 251, 198 USPQ 412 (CCPA 1978)). We read, as did the Board, the examiner's final rejection to be based upon both of two independent prerequisites to reissue, found in 35 U.S.C. § 251, which are that the pat-

entee specify "error without any deceptive intention" and that the Commissioner may not reissue a patent with new claims unless the reissued patent is "for the invention disclosed in the original patent." On the patentees' appeal to the Board, the examiner filed an answer which contended that, additionally, the "disclosure fails to present an enabling disclosure on which claims 10–12 can find support" as required by 35 U.S.C. § 112 ¶ 1.

## II

In its opinion, the Board first addressed the examiner's finding that the reissue declaration was legally insufficient under 37 C.F.R. § 1.175(a)(5) for failing to specify or identify the type of error contemplated by the statute. The Board held:

Our assessment of the supplemental reissue declaration, however, indicates to us that it complies with 37 CFR 1.175(a)(5). Specifically, we determine that section 4) of the supplemental declaration, bridging pages 2 and 3 thereof, particularly specifies in reasonable detail how the errors relied upon arose by setting forth a chronology of relevant events.

*Ex parte Amos,* slip op. at 4.

The Board further found that "the subject matter of these claims was disclosed in accordance with 35 USC 112." *Id.* at 8. However, the Board concluded that:

appellants' failure to claim the subject matter of claims 10 through 12 was not the result of the "error" required by 35 USC 251. The subject matter of claims 10 through 12 was not originally claimed, not an object of the original patent, and not depicted in the drawing. Thus, we perceive that the *objective intent* of the patentees manifested in the original patent was to solely claim the invention of claims 1 through 9.

\*   \*   \*   \*   \*   \*

Specifically, appellants submit that there is no manifestation of an *intent* not to claim in the original patent, and argue that the patent clearly shows that they *intended to claim* the control of the rollers and clamps by the computer. The

difficulty we have with this advocated position is that appellants do not provide us with any insight as to where the original disclosure evidences an *intent to claim,* and we can find none.

In summary, this board sustains the examiner's rejection of appellants' claims under 35 USC 251, for the reasons given above.

*Ex parte Amos,* slip op. at 8–9 (emphasis added).

The Board thus specifically declined to affirm the rejection on two of the grounds suggested by the examiner: that the disclosure did not support the claims under § 112 ¶ 1; and, that the supplemental affidavit did not satisfy the statutory requirement that reissue is permitted only upon demonstration of error without any deceptive intention. Rather, the Board found that the disclosure of the original patent failed to set forth an "intent to claim" the subject matter for which protection was sought on reissue.

### III

This appeal invites us to address the proper role under 35 U.S.C. § 251, if any, for the concept of an "intent to claim" in a rejection of claims submitted during reissue. We start, as we must, with the words of the statute, which, in pertinent part, state:

> Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

35 U.S.C. § 251 ¶ 1 (1988).

The section requires that the patentee base the application for reissue upon one of four specified grounds statutorily-identified as correctable defects. *In re Clark,* 522 F.2d 623, 625–26, 187 USPQ 209, 211–12 (CCPA 1975). First, an asserted defect may arise from an error in the specification. *In re Salem,* 553 F.2d 676, 679, 193 USPQ 513, 516 (CCPA 1977) (reissue permitted to correct specification term "polyvalent anions" to clearly-implied "source of polyvalent anions"). Second, the patentee may correct a defective drawing. The final two reasons for which the patentee may seek reissue concern original claims subsequently discovered to have been either too narrow or too broad. *In re Handel,* 312 F.2d 943, 948, 136 USPQ 460, 464 (CCPA 1963) (purpose of statute is to permit limitations to be added to, or removed from, claims). The basis for seeking narrowing reissue has generally been the belated discovery of partially-invalidating prior art. *In re Harita,* 847 F.2d 801, 805, 6 USPQ2d 1930, 1932 (Fed.Cir.1988). In contrast, a broadened reissue has generally been founded upon post-issuance discovery of attorney error in understanding the scope of the invention. *In re Wilder,* 736 F.2d 1516, 1519, 222 USPQ 369, 371 (Fed.Cir. 1984) ("attorney's failure to appreciate the full scope of the invention is one of the most common sources of defects"), *cert. denied,* 469 U.S. 1209, 105 S.Ct. 1173, 84 L.Ed.2d 323 (1985); *see also Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1575, 18 USPQ2d 1001, 1009 (Fed.Cir.1991).

In setting forth the purpose of the reissue, the patentee must submit an oath or declaration along with the surrendered patent and a payment of the requisite fee. 37 C.F.R. § 1.172(a) (1988); *see* 35 U.S.C. § 251 ¶ 3 (1988). "There are two distinct statutory requirements that a reissue oath or declaration must satisfy. First, it must state that the patent is defective or partly inoperative or invalid because of defects in the specification or drawing, or because the patentee has claimed more or less than he is entitled to. Second, the applicant must allege that the defective, inoperative, or invalid patent arose through error without deceptive intent." *Wilder,* 736 F.2d at

1518, 222 USPQ at 370; *see also Hewlett–Packard Co. v. Bausch & Lomb Inc.*, 882 F.2d 1556, 1564–65, 11 USPQ2d 1750, 1757–58 (Fed.Cir.1989), *cert. denied*, 493 U.S. 1076, 110 S.Ct. 1125, 107 L.Ed.2d 1031 (1990).

Finally, the statute restricts the Commissioner to reissuing the patent only "for the invention disclosed in the original patent" with the proviso that "[n]o new matter shall be introduced into the application." The "original patent" clause of § 251 creates a requirement that precludes reissue, historically styled as a "same invention" rejection, of patents with claims to subject matter that could not have been claimed in the original patent that is submitted for reissue.

As is apparent from the foregoing statutory analysis, "[t]he phrase 'intent to claim' does not appear in the statute." *In re Weiler*, 790 F.2d 1576, 1581, 229 USPQ 673, 676 (Fed.Cir.1986); *see also Scripps Clinic*, 927 F.2d at 1575, 18 USPQ2d at 1009 (" 'Intent to claim' is not the criterion for reissue").

### IV

In practice, the rejection of reissue claims has been founded upon either a failure to demonstrate error without deceptive intention, *see Weiler*, or because the newly submitted claims are not supported by the disclosure of the "original patent." In the decision before us, the Board specifically rejected the examiner's contention that the supplementary declaration was insufficient to demonstrate "error without any deceptive intention." [1] Thus, we do not read the Board opinion as having rejected the claims because the submitted declaration failed to specify the statutorily-required error.

Thus, we must read the Board's invocation of the "infelicitous" phrase, "intent to claim," *see Weiler*, 790 F.2d at 1580, 229 USPQ at 675, as a decision that the new claims were not "for the invention disclosed in the original patent," or, in the time-honored terminology, were not for the "same invention." We note that the phrase has been oft employed in support of a rejection grounded upon a failure of the patentee to show that the new claims are directed to the "same" invention as that originally disclosed. *In re Rowand*, 526 F.2d 558, 187 USPQ 487 (CCPA 1975); *In re Mead*, 581 F.2d 251, 198 USPQ 412 (CCPA 1978). Therefore, the Board's decision must be based upon its determination that the original disclosure does not support the subject matter of the new claims as required by the "original patent" clause of § 251.

We thus must turn to our binding precedent from the Court of Customs and Patent Appeals to understand the legal parameters that support a "same invention" or "original patent" rejection of claims in a reissue application. As noted by that court:

> "intent to claim" arose from the requirement that the reissue be for the "same invention" as the original, i.e., that it cover what was "intended to have been covered" by the original [citing 35 U.S.C. § 64 (1946), *repealed by* Patent Act of 1952, Pub.L. No. 593, § 251, 66 Stat. 792, 808 (1952)]....
>
> * * *
>
> Thus, in *Rowand* and similar cases, "intent to claim" has little to do with "intent" *per se*, but rather is analogous to the requirement of § 112, first paragraph that the specification contain a "written description of the invention, and of the manner and process of making and using it." It is, as appellant urges, synonymous with "right to claim."

*Mead*, 581 F.2d at 256, 198 USPQ at 417.

Our predecessor court further explained the proper test under the "same invention" or "original patent" statutory arm:

> Solicitor's office can challenge the decision of the Board, we reject the suggestion. The Board's decision that the supplementary declaration averred sufficient facts to support a finding of error is not clearly erroneous.

---

1. In its brief on behalf of the Commissioner of Patents and Trademarks, the Solicitor suggests that the reissue declaration did not satisfy the statutory requirement of error without deceptive intention. Assuming, *arguendo,* that the

Determining what protection appellants intended to secure by their original patent for the purposes of § 251 is an essentially factual inquiry confined to the *objective* intent manifested by the original patent.

*Rowand,* 526 F.2d at 560, 187 USPQ at 489 (emphasis original).

Hence, the purpose of the rubric "intent to claim" is to ask the same question as to whether "new matter" has been "introduced into the application for reissue" thus, perforce, indicating that the new claims are not drawn to the same invention that was originally disclosed. That inquiry is but a restatement of the question whether that which is claimed in reissue could have been claimed on the basis of the original disclosure, given that the requisite inadvertent error has been demonstrated, as is the case here. Thus, the inquiry that must be undertaken to determine whether the new claims are "for the invention" originally disclosed, to paraphrase *Rowand,* is to examine the entirety of the original disclosure and decide whether, through the "objective eyes" of the hypothetical person having ordinary skill in the art, an inventor could fairly have claimed the newly submitted subject matter in the original application, given that the requisite error has been averred. We agree with, and, in any event, are bound by, the statement in *Mead,* quoted above, that the inquiry under § 251 as to whether the new claims are for the invention originally disclosed is analogous to the analysis required by § 112 ¶ 1. Under one aspect of that analysis, a court must ascertain whether "the disclosure originally filed [conveys] to those skilled in the art that applicant had invented the subject matter later claimed." *Wilder,* 736 F.2d at 1520, 222 USPQ at 372; *see also In re Kaslow,* 707 F.2d 1366, 1375, 217 USPQ 1089, 1096 (Fed.Cir.1983); *In re Edwards,* 568 F.2d 1349, 1351, 196 USPQ 465, 467 (CCPA 1978) ("The function of the description requirement is to ensure that the inventor had possession, as of the filing date of the application relied on, of the specific subject matter later claimed by him.").

Since the Board concluded that the original disclosure embraces the matter claimed in reissue, the Board erred in denying the reissue application on the basis of the lack of an "intent to claim." In the case at hand, the Solicitor, in his brief to this court, expressly concedes that the Board was correct in finding that the patentees' reissue claims comply with the enablement and written description requirements of § 112 ¶ 1. Under *Rowand,* given a satisfactory averment of inadvertent error, this position is arguably inconsistent with a "same invention" rejection. However, the issue of whether the tests, for written description and enablement under § 112 ¶ 1 and for "same invention" under § 251, are in every case exactly co-extensive, neither briefed nor argued in this case, is not properly before us on the instant facts, since the Board's decision rests only upon the factual determination that the patentees' lacked an objective "intent to claim" the new subject matter. We need only decide whether a reissue application can be rejected under the "error" rubric for failure to demonstrate an objective intent to claim, when the Board has held that the subject matter of the reissue claims meets the requirements of § 112 ¶ 1.

We conclude that, under both *Mead* and *Rowand,* a claim submitted in reissue may be rejected under the "original patent" clause if the original specification demonstrates, to one skilled in the art, an absence of disclosure sufficient to indicate that a patentee could have claimed the subject matter. Merely finding that the subject matter was "not originally claimed, not an object of the original patent, and not depicted in the drawing," does not answer the essential inquiry under the "original patent" clause of § 251, which is whether one skilled in the art, reading the specification, would identify the subject matter of the new claims as invented and disclosed by the patentees. In short, the absence of an "intent," even if objectively evident from the earlier claims, the drawings, or the original objects of the invention is simply not enough to establish that the new claims

are not drawn to the invention disclosed in the original patent.[2]

Our conclusion in this circumstance is dictated by this Court's previous decision in *In re Hounsfield*, 699 F.2d 1320, 216 USPQ 1045 (Fed.Cir.1983).[3] In *Hounsfield*, the Board rejected reissue claims on the ground that " 'the record makes it clear that it was not appellant's intention to claim the subject matter of claims 7 through 11 in the original [131] patent.' " *Hounsfield*, 699 F.2d at 1321, 216 USPQ at 1046 (quoting the Board). The issue for decision was whether the rejection was sustainable under § 251. This Court concluded that:

> lack of "intent to claim" is not an independent basis for denying a reissue application under section 251. It is only one factor that sheds light upon whether the claims of the reissue application are directed to the same invention as the original patent and the reissue would correct an inadvertent error in the original patent.

*Hounsfield*, 699 F.2d at 1323, 216 USPQ at 1048.

Thus, we conclude, as did this Court in *Hounsfield*, that the presence or absence of an objective intent to claim, standing alone, is simply not dispositive of any required inquiry under § 251.

REVERSED.

claims in the reissue application are directed to the same invention as the original patent and the reissue would correct an inadvertent error in the original patent." *Hounsfield*, 699 F.2d at 1323, 216 USPQ at 1048.

**2.** The Board cites the case of *U.S. Industrial Chems. v. Carbide & Carbon Chems. Corp.*, 315 U.S. 668, 62 S.Ct. 839, 86 L.Ed. 1105 (1942), in support of its use of the phrase "intent to claim." In *U.S. Industrial*, the Supreme Court held that the reissue claims were invalid because the patentees had added new matter to the original disclosure which was the only support for those claims. In the course of the decision, which was based upon the statutory requirement that the reissue claims be for the "same invention," *see* 35 U.S.C. § 64 (1946), the Supreme Court referred to various other tests under which reissue claims might be held invalid. To the extent that the language of *U.S. Industrial* supports the use of the legal oxymoron, "objective intent to claim," as an analytical tool to discern the scope of the original disclosure, nothing in this opinion, nor in *Mead, Rowand*, or *In re Hounsfield*, 699 F.2d 1320, 216 USPQ 1045 (Fed.Cir.1983), differs in legal significance. The objective intent to claim found in the original disclosure, insofar as the construct is analytically useful, however, exists as "only one factor that sheds light upon whether the

**3.** Neither party nor the Board cited or discussed this case. Inexplicably, all three rely instead on dicta from *Weiler*. The issue for decision in *Weiler* was whether the patentee had demonstrated error without deceptive intention, not whether the claims were to the same invention as the "original patent." We do not quibble with the holding in *Weiler* that satisfaction of the § 112 ¶ 1 written description requirement does not establish "error" under § 251. *Weiler*, 790 F.2d at 1581 n. 2, 229 USPQ at 676 n. 2. *Weiler* did not involve the question of whether § 112 ¶ 1 speaks conclusively to the "original patent" requirement of § 251. *See* 4 D. Chisum *Patents* § 15.03[3] n. 15 (1991). We have no ready explanation for the Board's or the parties' attention to *Weiler* and utter inattention to *Hounsfield*.