**HESTER INDUSTRIES, INC.,**
**Plaintiff–Appellant,**

v.

**STEIN, INC., Defendant–Cross Appellant.**

Nos. 97–1352, 97–1353.

United States Court of Appeals,
Federal Circuit.

May 7, 1998.

Robert W. Adams, Nixon & Vanderhye, P.C., Arlington, VA, argued for plaintiff-appellant. With him on the brief were Robert

A. Vanderhye, James T. Hosmer, Robert W. Faris, and William J. Griffin.

Charles H. De La Garza, Arnold, White & Durkee, Minneapolis, MN, argued for defendant-cross appellant. With him on the brief were L. Gene Spears, Attorney of Record, and James C. Pistorino, Houston, TX.

Before PLAGER and SCHALL, Circuit Judges.[1]

PLAGER, Circuit Judge.

Hester Industries, Inc. ("Hester") appeals from a summary judgment of invalidity entered by the United States District Court for the Eastern District of Virginia. The district court ruled that the reissue patent claims asserted by Hester against Stein, Inc. ("Stein") are invalid for failing to meet the statutory "error" and "original patent" requirements for reissue patents set forth in 35 U.S.C. § 251 ¶ 1 (1994). *Hester Indus., Inc. v. Stein, Inc.*, 963 F.Supp. 1403 (E.D.Va. 1997). Stein cross-appeals a pretrial oral ruling in which the district court adopted Hester's proposed construction of the claim term "high humidity steam."

Because the asserted reissue claims impermissibly recapture subject matter surrendered by Hester through deliberate arguments repeatedly made to the Patent Office to overcome prior art, we hold that Hester is barred from asserting "error" within the meaning of 35 U.S.C. § 251 ¶ 1. We accordingly affirm the summary judgment of invalidity. Because the asserted claims are invalid, we need not and do not reach the claim construction issue.

## BACKGROUND

At issue in this case are two reissue patents, U.S. Patent No. Re. 33,510 (the " '510 reissue patent") and U.S. Patent No. Re. 35,259 (the " '259 reissue patent"). The two patents are reissues of the same original patent, U.S. Patent No. 4,582,047 (the " '047 patent" or "original patent"), which they replaced pursuant to 35 U.S.C. § 251.[2] The patents are directed to a high humidity steam cooker having a continuously running conveyor for cooking food items such as poultry and other meat products. Hester, a processor of pre-cooked poultry and other meat products, owns the patents, and Charles E. Williams ("Williams"), a Hester employee, is the sole named inventor. After the '259 reissue patent (the second reissue) issued in 1996, Hester sued Stein, a manufacturer of industrial appliances, for allegedly infringing several reissue claims in the two reissue patents.

The two reissue patents and the original patent have the same written description; the patents differ only with respect to their claims. That written description describes an industrial-size steam cooker for cooking large quantities of food products. The cooker is described as having a cooker chamber in which a steam atmosphere is maintained. The food products are carried through the cooker chamber on a conveyor belt that runs through a spiral path. The written description teaches that efficient cooking is achieved without the loss of humidity, flavor, or appearance by maintaining a water-drop-free steam atmosphere within the chamber at near 100°C and 100% humidity, at above atmospheric pressure.

Two separate sources of steam, one internal and one external, are described for maintaining the steam atmosphere. The internal source of steam described is a pool of water on the floor of the cooker chamber, heated by a heating element in the pool. The external source described is a steam generator, located outside the cooker chamber and connected by pipes to various locations within the cooker chamber to inject steam at those locations. The written description states that the external steam source typically provides 25% of

---

1. A member of the panel that heard argument in this case was unable to continue with consideration of the case because of recusal. Pursuant to Rule 47.11 of this court, the matter was decided by the remaining members of the panel.

2. The district court noted that the issuance of two reissue patents for the same original patent was a "curiosity" that appeared to be unprecedented. *Hester*, 963 F.Supp. at 1405 n. 2. However, the propriety of two reissues for the same patent was not addressed below and has not been raised on appeal. Accordingly, we express no opinion on the matter.

the steam, with the remainder provided by the internal source. '047 patent, col. 3, ll. 42–45, 57–59. The heating element in the internal steam source is controlled to maintain the desired amount of steam and pressure within the cooker chamber. *Id.* col. 3, ll. 59–63.

The section of the written description entitled DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT describes the cooking atmosphere thus:

> The cooking is solely with water droplet free steam near 100°C. and 100% humidity at a pressure above atmospheric. The high humidity atmosphere prevents losses of humidity of the product as it passes through the cooker and helps retain juices, essences and flavor of the product. Also it improves the heating steam interface heat exchange at the product surface for more efficient cooking.
>
> The higher pressure not only produces a pressure-cooker like cooking efficiency to the cooking process, but is critical in connection with the flavor and conveyor type product flow as well.

*Id.* col. 3, ll. 22–33.

The original patent contains one independent claim, claim 1, directed to a food cooking system. The claim specifies that the cooking system cooks solely with steam and that the system includes two sources of steam to provide the steam atmosphere. Characteristics of the steam atmosphere are set forth, and the cooking system is said to include a means passing a conveyor belt through the cooker housing. Claim 1, with relevant text emphasized, reads:

> A food cooking system *cooking solely with steam* foods such as fish, fowl, meats or produce carried through a cooker on a continuously running conveyor belt, comprising in combination, a cooker housing, *means passing said conveyor belt through said housing* to expose food products within the cooker housing only to *said steam as the sole cooking medium,* and *two sources of steam providing said steam* to cook the food products, nozzles for releasing steam located inside said housing, one comprising a steam generator supplying supplemental steam into said housing at said nozzles located thereinside *to main-*

> *tain the atmosphere together with the other steam source at near 100% humidity 100°C. and a pressure above atmospheric,* and the other source of steam comprising a pool of water within said housing with heating means for boiling the water to create steam.

*Id.* col. 5, l. 59 to col. 6, l. 8. For purposes here, this is substantially the same form in which the claim was first filed (as application claim 1) in the application for the original patent. Accordingly, we do not distinguish between the issued claim and the application claim, but instead simply refer to claim 1.

In addition to the independent claim, the original patent contains several claims which are dependent upon claim 1. Relevant here is dependent claim 12, which specifies in pertinent part: "A system as defined in claim 1 *wherein the conveyor belt is passed* inside said housing *in a spiral path* coiling downwardly...." *Id.* col. 6, ll. 59–61 (emphasis added). This claim stemmed from original application claim 16, which specified that the conveyor belt is "passed ... in a spiral path."

The application for the '047 patent (the original patent) was filed in 1979. The patent did not issue until 1986, nearly seven years later. Over the almost seven years in which the application was prosecuted before the United States Patent and Trademark Office ("Patent Office"), inventor Williams, through his attorney, repeatedly emphasized the "solely with steam" and "two sources of steam" features of the claimed invention in attempting to establish patentability over the prior art. For example, after the Examiner first rejected claim 1 as well as all the other claims as obvious, Office Action of Feb. 6, 1980, at 2, Williams distinguished a cited prior art cooker that cooked with a combination of infra-red dry heat and steam on the ground that the claimed invention cooked solely with steam, stating: "This principle is completely different from applicant's invention where the claims define cooking *solely* with steam." Applicant Response of Apr. 28, 1980 (emphasis in original). Williams also distinguished claim 1 on the basis of the "two sources of steam" limitation, the specified characteristics of the steam atmosphere, and

the recited continuously running conveyor belt. *Id.*

Application claim 16, which specified a spiral conveyance path, was rejected as obvious in view of an additional prior art cooker that included a spiral conveyor. Office Action of Feb. 6, 1980, at 4. In response, Williams amended claim 16 to specify further details of the spiral conveyance path and then argued that the claimed spiral conveyance path was distinguished from that shown in the prior art. Applicant Response of Apr. 28, 1980.

However, the Examiner continued to reject all claims as obvious. Office Action of July 9, 1980. At that point, Williams placed even greater reliance on the "solely with steam" and "two sources of steam" limitations in an attempt to overcome the obviousness rejection. For example, in his first appeal of the obviousness rejection to the Board of Patent Appeals and Interferences ("Board"), Williams stated, "The claimed system cooks *solely* with steam ... by means of two separate and critical steam sources...." Applicant Brief on Appeal, at 2 (Aug. 20, 1980) (emphasis in original). Later in the same brief, Williams specifically distinguished the cited prior art on the basis of these limitations:

> The primary reference Vischer cooks with IR radiation not steam. Clearly the claimed feature of cooking *solely* with steam is directly contrary to the teaching of the Vischer patent, which could therefore never make obvious any process or equipment cooking *solely* with steam as claimed.
>
> . . . .
>
> The Examiner errs in any implication that Jourdan shows two sources of steam.

*Id.* at 9–10 (emphasis in original).

Prior to the Board hearing Williams' appeal, the Examiner reopened prosecution on the merits in view of newly discovered prior art, thereby removing the appeal from the Board.[3] Office Action of Mar. 17, 1981. The Examiner then rejected all of the claims as obvious over the new prior art. *Id.* In response, Williams distinguished claim 1 over

that prior art on the same bases, *i.e.*, the "solely with steam" and "two sources of steam" limitations. Applicant Response to Office Action (Apr. 17, 1981). However, the Examiner was not persuaded, even after these same arguments were repeated in subsequent papers submitted to the Patent Office.

Accordingly, Williams initiated a second appeal to the Board. He again emphasized the "solely with steam" and "two sources of steam" limitations. Applicant Brief on Appeal, at 13 (Dec. 22, 1981). He explained that the two sources of steam interact to provide a "synergy" that is "novel and nowhere suggested in any of the cited [prior] art." *Id.* Williams drove home his reliance on the "solely with steam" limitation most forcefully in his reply brief to the Board: "Clearly the Examiner reversibly errs as a matter of fact and in his efforts to make a case out against the *very material claimed feature that steam is the sole cooking medium (claim 1)*. Thus reversal is respectfully solicited." Applicant Reply Brief on Appeal, at 6 (Sep. 30, 1982) (emphasis in original).

The Board was persuaded and accordingly reversed the obviousness rejection in its opinion dated June 21, 1985, stating:

> [W]e find no suggestion in the combined teachings of the references which would have led the ordinarily skilled worker in the art to an apparatus utilizing steam as the sole cooking medium; utilizing two separate sources of steam, one of which includes a pool of water in the cooking chamber with means for boiling the water; and wherein the atmosphere within the cooking chamber is maintained above atmospheric by the two sources of steam.

Thereafter the claims were allowed and the application issued as the '047 patent on April 15, 1986.

On the two-year anniversary of the '047 patent's issuance, Williams applied for a reissue pursuant to 35 U.S.C. § 251, alleging that the patent claims had been drawn too narrowly due to attorney error. In the required oath accompanying the reissue application, Williams explained that he became

---

**3.** Accordingly, the Board never heard Willams' first appeal.

aware of this alleged error after learning that Stein was in the process of developing a competing cooker in early 1988. According to his oath, Williams and his employer Hester concluded that the '047 patent should cover the Stein cooker, notwithstanding the fact that the cooker used a non-steam heat source and only one source of steam in the cooking process. Williams further explained that Hester's present counsel advised Hester that the '047 patent claims, as written, might not cover Stein's cooker. Thus, Williams, by oath, declared that the patent was insufficient because it claimed less than he had a right to claim.

Specifically, Williams identified two relevant deficiencies of the '047 patent, as follows (indentation and numbering added): [4]

> ■ that each of claims 1–14 therein requires cooking "solely with steam" and exposing food products within the cooker housing "only to said steam as the sole cooking medium" .... [and]
>
> ■ that each of claims 1–14 therein requires "two sources of steam providing said steam to cook the food products, nozzles for releasing steam located inside said housing"[.]

These deficiencies, according to Williams, "arose after [he] executed and filed the original application from which the '047 patent issued" and were caused by "the failure of [his prior] patent attorney ... to appreciate the full scope of [his] invention."

This application ripened into the '510 reissue patent nearly three years later on January 1, 1991. However, prior to its issuance, Williams filed a second reissue application, for reasons not relevant here, on June 21, 1990, alleging the same errors used to support the first reissue. Six years later, this second reissue application issued as the '259 reissue patent. Hester then filed this action, accusing Stein of infringing two claims in the first reissue patent and six claims in the

second. Specifically, Hester accused Stein of infringing reissue claims 26 and 59 of the '510 reissue patent and reissue claims 28, 30, 31, 32, 75, and 76 of the '259 reissue patent.

The requirement in original claim 1 that cooking is "solely with steam" is absent from each of the asserted reissue claims. Also absent is the "two sources of steam" limitation. Rather, the asserted reissue claims merely recite a source of steam or at least one source of steam. None of the asserted reissue claims explicitly recite the steam atmosphere characteristics specified in original claim 1, *i.e.*, the characteristics of near 100Č and 100% humidity at above atmospheric pressure. Instead, all but one of the asserted reissue claims recite "high humidity steam." [5]

Claim 26 of the '510 reissue patent is representative of the two asserted reissue claims in that patent. It provides in pertinent part:

> A food cooking system for cooking food products carried on a moving conveyor belt, comprising:
>
> a cooker housing[,]
>
> *means disposed within said housing for defining a conveyance path,*
>
> a conveyor belt disposed along said conveyance path for supporting and conveying said food products along said path,
>
> means coupled to said belt for causing said belt and said food products supported thereby to substantially continually translate along said conveyance path ..., and
>
> *a source of steam providing steam to contact and cook the food products, said steam source comprising at least one of the following:*
>
>> an external steam generator supplying steam into said housing, and
>>
>> a pool of water within said housing with heating means communicating with said pool of water for creating steam .... [,]
>>
>> ■ "a pool of water within the housing with heating means for boiling the water to create steam."
>
> (Indentation and numbering added.)

4. The reissue oath specifies two further insufficiencies, namely, that the '047 patent requires: [3] "a steam generator supplying supplemental steam into said housing at said nozzles located thereinside to maintain the atmosphere together with the other steam source at near 100% humidity 100°C, and a pressure above atmospheric" and

5. Claim 30 of the '259 reissue patent does not contain the "high humidity steam" language.

*wherein said steam source provides high humidity steam* and said food products are directly exposed to said high humidity steam.

'510 patent, col. 8, ll. 8–31, 36–38 (emphasis added, and text of claim 24, upon which claim 26 depends, incorporated).

The asserted reissue claims of the '259 reissue patent are, for purposes here, substantially similar. One difference is that several of these claims explicitly recite a "spiral conveyance path." Claim 28, which is representative, provides in pertinent part:

A spiral steam cooker for at least partially cooking exposed food products, said cooker comprising:

a housing defining an internal volume therein;

a conveyor belt at least partially *disposed along a spiral conveyance path* within said internal volume . . . ; and

*a steam source* operatively coupled to said housing, said steam source *providing a high humidity steam atmosphere* within said internal volume, said high humidity steam atmosphere directly contacting and at least partially cooking the exposed food products . . . .

'259 patent, col. 9, l. 61 to col. 10, l. 12 (emphasis added).

Before the district court, Stein moved for summary judgment that the asserted reissue claims are invalid for failing to meet the requirements of the reissue statute, 35 U.S.C. § 251. That section (with emphasis added) reads:

Whenever any patent is, through *error* without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or *by reason of the patentee claiming more or less than he had a right to claim in the patent,* the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent *for the invention disclosed in the original patent,* and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

In particular, Stein argued that the "error" requirement of § 251 ¶ 1, as well as the requirement therein that the reissue claims be "for the invention disclosed in the original patent" (the "original patent" requirement), were not met. With regard to the "error" requirement, Stein argued that Williams had not erred in including the "solely with steam" and "two sources of steam" limitations in the original claims, and further argued that the removal of those limitations violated the "recapture" rule. Stein further argued that the asserted reissue claims violated the "original patent" requirement because, Stein asserted, the original patent does not evidence an "objective" intent to claim the invention in the manner of the asserted reissue claims.

The district court granted Stein's motion. The court first concluded that there was no "error" as contemplated by § 251 ¶ 1. Specifically, the court concluded that the alleged failure of counsel to appreciate the scope of the invention was belied by the clear language in the original patent claims, the prosecution history of the patent, and the absence of any explanation as to the nature or cause of the attorney's failure to appreciate the full scope of the invention. *Hester,* 963 F.Supp. at 1408. The court did not reach Stein's assertion that the asserted reissue claims violate the recapture rule, though the court relied heavily on the original patent's prosecution history in determining that the "error" requirement was not met. *See id.* at 1409–11.

The district court ruled that the asserted reissue claims are alternatively invalid for failing to meet the "original patent" requirement. *Id.* at 1412. The district court concluded that the "original patent" clause of § 251 ¶ 1 includes a separate requirement that the original patent manifest an "objective" intent to claim the invention as later claimed on reissue. *Id.* at 1412–13 The court concluded that the original patent does not manifest such an objective intent, and thus the claims are also invalid under the "original patent" clause of § 251 ¶ 1. *Id.* at 1412–15.

In its appeal of the invalidity judgment, Hester argues that the district court erred in concluding that the "error" and "original patent" requirements of § 251 ¶ 1 were not met.

Stein, in seeking to uphold the judgment, makes the same arguments presented to the district court in its motion for summary judgment. Hester, on the other hand, argues that the "error" requirement was met by way of prior patent counsel's failure to appreciate the full scope of the invention. Hester further asserts that the recapture rule is inapplicable because the reissue claims were never presented during prosecution of the original patent and later abandoned by amendment or cancellation. With regard to the "original patent" clause of § 251 ¶ 1, Hester submits that there is no separate requirement of a manifestation of an objective intent to claim.

Also at issue on appeal is the district court's resolution of a "Motion For Claim Interpretation" brought by Stein. In that motion, Stein argued that the claim term "high humidity steam" should be construed in accordance with the only specific description of the steam atmosphere provided in the patents, *i.e.*, as water-droplet-free steam near 100°C and 100% humidity at above atmospheric pressure. Hester, relying on the opinion of its expert, proposed a broader construction, arguing that the description contained in the patents is merely one example of "high humidity steam." The district court, in a ruling delivered from the bench prior to holding the asserted reissue claims invalid, adopted Hester's proposed construction of the claim term. The ruling was never reduced to a formal order or judgment. The parties, by way of cross-appeal by Stein, present the same issue on appeal.

## DISCUSSION

### I

■ In reviewing the summary judgment of invalidity, we keep in mind that summary judgment is appropriate only when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Whether the statutory requirements of 35 U.S.C. § 251 have been met is a question of law. *See In re*

*Clement,* 131 F.3d 1464, 1468, 45 USPQ2d 1161, 1163 (Fed.Cir.1997). This legal conclusion can involve underlying factual questions. *See id.*

### II

■ As previously explained, the "error" and "original patent" requirements at issue here are found in the first paragraph of § 251. The "error" requirement limits the availability of a reissue patent to certain correctable errors. *See In re Amos,* 953 F.2d 613, 616, 21 USPQ2d 1271, 1273 (Fed. Cir.1991). As seen in the above-emphasized text of § 251, one such correctable error is the patentee claiming his invention too broadly or too narrowly.[6] *See id.*

■ The "original patent" requirement is a second and independent requirement, *see Amos,* 953 F.2d at 615, 21 USPQ2d at 1272, which restricts a reissue patent to "the invention disclosed in the original patent." 35 U.S.C. § 251 ¶ 1. We address each of these requirements in turn.

### A

#### 1

■ In considering the "error" requirement, we keep in mind that the reissue statute is "based on fundamental principles of equity and fairness, and should be construed liberally.". *In re Weiler,* 790 F.2d 1576, 1579, 229 USPQ 673, 675 (Fed.Cir.1986). We also keep in mind that "not every event or circumstance that might be labeled 'error' is correctable by reissue." *Id.* Indeed, the reissue procedure does not give the patentee the right "to prosecute *de novo* his original application." *Id.* at 1582, 790 F.2d 1576, 229 USPQ at 677; *see also Mentor Corp. v. Coloplast, Inc.,* 998 F.2d 992, 995, 27 USPQ2d 1521, 1524 (Fed.Cir.1993).

One of the most commonly asserted "errors" in support of a broadening reissue is the failure of the patentee's attorney to appreciate the full scope of the invention during the prosecution of the original patent application. *See Amos,* 953 F.2d at 616, 21 USPQ2d

---

**6.** The last paragraph of § 251 requires that a request to enlarge the scope of claims be "ap- plied for within two years from the grant of the original patent." 35 U.S.C. § 251 ¶ 4 (1994).

at 1273; *In re Wilder,* 736 F.2d 1516, 1519, 222 USPQ 369, 371 (Fed.Cir.1984). This form of error has generally been accepted as sufficient to satisfy the "error" requirement of § 251. *See Clement,* 131 F.3d at 1468, 45 USPQ2d at 1163; *Wilder,* 736 F.2d at 1519, 222 USPQ at 371. Williams asserted this form of error as the basis for his reissue applications, and the Patent Office accepted his assertion as adequate.

However, the district court concluded that there was no such error by Williams' attorney. *Hester,* 963 F.Supp. at 1411. In reaching this conclusion, the court was particularly persuaded by the prosecution history of the original patent. The court concluded that the attorney's repeated attempts to distinguish Williams' invention on the basis of the "solely with steam" and "two sources of steam" limitations belied Williams' assertion that his attorney failed to appreciate the full scope of his invention. *Id.* at 1409–11. The court also determined that there was no other form of § 251 "error" and thus held the asserted reissue claims invalid. *Id.* at 1411–12.

### 2

■ We share the district court's discomfort with Williams' attempt to remove, through reissue, the "solely with steam" and "two sources of steam" limitations after having relied so heavily on those limitations to obtain allowance of the original patent claims over the prior art. This concern is addressed most squarely by the "recapture rule," recently discussed at length in *Clement,* 131 F.3d 1464, 45 USPQ2d 1161. The recapture rule "prevents a patentee from regaining through reissue . . . subject matter that he surrendered in an effort to obtain allowance of the original claims." *Clement,* 131 F.3d at 1468, 45 USPQ2d at 1164. The rule is rooted in the "error" requirement in that such a surrender is not the type of correctable "error" contemplated by the reissue statute. *See Mentor,* 998 F.2d at 995–96, 27 USPQ2d at 1525.

■ In its motion for summary judgment, Stein presented the recapture rule as one basis for finding the asserted reissue claims invalid, and Stein repeats this argument on

appeal as one basis for affirming the summary judgment of invalidity. While the district court did not explicitly rule on this ground, its opinion indicates the view that Hester, through the reissue patents, recaptured surrendered subject matter. *Hester,* 963 F.Supp. at 1412 (stating that through the reissues, Hester obtained claims covering "ovens with characteristics repeatedly distinguished and disclaimed in the PTO" and that that was contrary to the "error" requirement of § 251). As will be next explained, we conclude that the asserted reissue claims violate the recapture rule and that the summary judgment ruling is appropriately affirmed on this ground.

■ "Under [the recapture] rule, claims that are 'broader than the original patent claims in a manner directly pertinent to the subject matter surrendered during prosecution' are impermissible." *Clement,* 131 F.3d at 1468, 45 USPQ2d at 1164 (quoting *Mentor,* 998 F.2d at 996, 27 USPQ2d at 1525). Application of the recapture rule begins with a determination of whether and in what respect the reissue claims are broader than the original patent claims. *See id.* A reissue claim that does not include a limitation present in the original patent claims is broader in that respect. *See id.* Here, it is undisputed that the asserted reissue claims are broader than the original patent claims in that the reissue claims do not include the "solely with steam" and "two sources of steam" limitations found in each of the original patent claims.

■ Having determined that the reissue claims are broader in these respects, under the recapture rule we next examine whether these broader aspects relate to surrendered subject matter. *See id.* at 1468–69, 131 F.3d 1464, 45 USPQ2d at 1164. "To determine whether an applicant surrendered particular subject matter, we look to the prosecution history for *arguments* and changes to the claims made in an effort to overcome a prior art rejection." *Id.* at 1469, 131 F.3d 1464, 45 USPQ2d at 1164 (emphasis added). This statement in *Clement* indicates that a surrender can occur by way of arguments *or* claim changes made during the prosecution of the

original patent application. To date, the cases in which this court has found an impermissible recapture have involved claim amendments or cancellations. *See, e.g., id.* at 1469–70, 131 F.3d 1464, 45 USPQ2d at 1164–65; *Mentor,* 998 F.2d at 995–96, 27 USPQ2d at 1524–25. However, in addition to the suggestion in *Clement* that argument alone can effect a surrender, this court expressly left open that possibility in *Ball Corp. v. United States:* "If reissue is sought where claims have not been previously canceled, analysis becomes more difficult. In that case relative claim scope is not available to illuminate the alleged error. We are not faced with that situation in this proceeding." 729 F.2d 1429, 1436 n. 19, 221 USPQ 289, 295 n. 19 (Fed.Cir.1984). Prior to this case, this court has not squarely addressed the question.

■ This court's prior opinions indicate that, as a general proposition, in determining whether there is a surrender, the prosecution history of the original patent should be examined for evidence of an admission by the patent applicant regarding patentability. *See Clement,* 131 F.3d at 1468, 45 USPQ2d at 1164 (noting that, with regard to claim amendments, the recapture rule does not apply in the absence of evidence that the amendment was an admission that the scope of the claim was not patentable); *Mentor,* 998 F.2d at 995, 27 USPQ2d at 1524 (same); *Seattle Box Co. v. Industrial Crating & Packing, Inc.,* 731 F.2d 818, 826, 221 USPQ 568, 574 (Fed.Cir.1984) (declining to apply the recapture rule when there was no evidence that the "amendment ... was in any sense an admission that the scope of [the] claim was not patentable"). In this regard, claim amendments are relevant because an amendment to overcome a prior art rejection evidences an admission that the claim was not patentable. *See Mentor,* 998 F.2d at 995–96, 27 USPQ2d at 1524–25 (finding surrender by way of claim amendments); *Ball,* 729 F.2d at 1436, 221 USPQ at 294 (noting that a court may draw inferences from changes in claim scope).

■ Arguments made to overcome prior art can equally evidence an admission sufficient to give rise to a finding of surrender.

Indeed, in *Mentor* and *Clement* the findings of a surrender were based in part on the arguments made in conjunction with the claim amendments. *Mentor,* 998 F.2d at 995–96, 27 USPQ2d at 1524–25; *Clement,* 131 F.3d at 1470–71, 45 USPQ2d at 1165–66. Logically, this is true even when the arguments are made in the absence of any claim amendment. Amendment of a claim is not the only permissible predicate for establishing a surrender.

The view that arguments alone can give rise to a surrender is consistent with the policy behind the reissue statute and the accompanying recapture rule. As already noted, the reissue statute is "based on fundamental principles of equity and fairness." *Weiler,* 790 F.2d at 1579, 229 USPQ at 675. There is no unfairness in binding the patentee to deliberate assertions made in order to obtain allowance of the original patent claims over the prior art. Indeed, fairness to the public must also be considered. In this regard, as stated in *Mentor,* "the reissue statute cannot be construed in such a way that competitors, properly relying on prosecution history, become patent infringers when they do so." 998 F.2d at 996, 27 USPQ2d at 1525. The recapture rule operates to prevent this from happening. *See id.* Furthermore, as recognized in *Ball,* the recapture rule is based on principles of equity and therefore embodies the notion of estoppel. 729 F.2d at 1439, 221 USPQ at 296.

Indeed, the recapture rule is quite similar to prosecution history estoppel, which prevents the application of the doctrine of equivalents in a manner contrary to the patent's prosecution history. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, —, 117 S.Ct. 1040, 1051, 137 L.Ed.2d 146 (1997). Like the recapture rule, prosecution history estoppel prevents a patentee from regaining subject matter surrendered during prosecution in support of patentability. *See id.*

Hester argues that an analogy cannot be made with prosecution history estoppel because the reissue procedure and prosecution history estoppel are the antithesis of one another—reissue allows an expansion of patent rights whereas prosecution history estop-

pel is limiting. However, Hester's argument is unpersuasive. The analogy is not to the broadening aspect of reissues. Rather, the analogy is with the recapture rule, which restricts the permissible range of expansion through reissue just as prosecution history estoppel restricts the permissible range of equivalents under the doctrine of equivalents.

This court earlier concluded that prosecution history estoppel can arise by way of unmistakable assertions made to the Patent Office in support of patentability, just as it can by way of amendments to avoid prior art. *See, e.g., Texas Instruments, Inc. v. International Trade Comm'n,* 988 F.2d 1165, 1174, 26 USPQ2d 1018, 1025 (Fed.Cir.1993). The same reasoning that led us to conclude that arguments alone can give rise to prosecution history estoppel lends support to the proposition that arguments alone can give rise to a surrender for purposes of the recapture rule.

Thus we conclude that, in a proper case, a surrender can occur through arguments alone. We next evaluate whether such a surrender occurred here with respect to the "solely with steam" and "two sources of steam" limitations, the pertinent aspects in which the asserted reissue claims are broader than the original patent claims. The obvious conclusion is that there has been a surrender.

As detailed above, Williams repeatedly argued that the "solely with steam" and "two sources of steam" limitations distinguished the original claims from the prior art. These were Williams' primary bases for distinguishing the broadest claim, independent claim 1, from the prior art. At no less than 27 places in six papers submitted to the Patent Office, Williams asserted that the "solely with steam" limitation distinguished the claimed invention from the prior art, and Williams did the same with respect to the "two sources of steam" limitation at no less than 15 places in at least five papers.

Williams argued that each of these limitations was "critical" with regard to patentability, and Williams further stated that the "solely with steam" limitation was "very material" in this regard. In essence, these repeated arguments constitute an admission by Williams that these limitations were neces-

sary to overcome the prior art. Indeed, when the Board reversed the Examiner's rejection of the original claims, these were the primary bases indicated for patentability. Williams, through his admission effected by way of his repeated prosecution arguments, surrendered claim scope that does not include these limitations.

Having concluded that there has been a surrender, we must next determine whether the surrendered subject matter has crept back into the asserted reissue claims. *See Clement,* 131 F.3d at 1469, 45 USPQ2d at 1164. When the surrender occurs by way of claim amendment or cancellation, "[c]omparing the reissue claim with the canceled claim is one way to do this." *See id.* This analysis is not available when the surrender is made by way of argument alone. Instead, in this case, we simply analyze the asserted reissue claims to determine if they were obtained in a manner contrary to the arguments on which the surrender is based.

Clearly they were. None of the asserted reissue claims include either the "solely with steam" limitation or the "two sources of steam" limitation. Thus, this surrendered subject matter—*i.e.,* cooking other than solely with steam and with at least two sources of steam—has crept into the reissue claims. The asserted reissue claims are unmistakably broader in these respects.

 Finally, because the recapture rule may be avoided in some circumstances, we consider whether the reissue claims were materially narrowed in other respects. *See, e.g., Mentor,* 998 F.2d at 996, 27 USPQ2d at 1525 ("Reissue claims that are broader in certain respects and narrower in others may avoid the effect of the recapture rule."); *Clement,* 131 F.3d at 1470, 45 USPQ2d at 1165. For example, in *Ball* the recapture rule was avoided because the reissue claims were sufficiently narrowed (described by the court as "fundamental narrowness") despite the broadened aspects of the claims. 729 F.2d at 1438, 221 USPQ at 296. In the context of a surrender by way of argument, this principle, in appropriate cases, may operate to overcome the recapture rule when the reissue claims are materially narrower in

other overlooked aspects of the invention. The purpose of this exception to the recapture rule is to allow the patentee to obtain through reissue a scope of protection to which he is rightfully entitled for such overlooked aspects.

However, this is not such a case. The asserted reissue claims are not materially narrower, despite Hester's arguments to the contrary. Hester argues that the claims are materially narrower by the addition of the "spiral conveyance path" and "high humidity steam" limitations. The term "high humidity steam" is included in each of the asserted reissue claims except reissue claim 30 of the '259 reissue patent. However, the term "high humidity steam" is actually the same as or broader than the limitation in original claim 1 that this term replaced. Original claim 1 specifies a steam atmosphere "at near 100% humidity 100°C and a pressure above atmospheric." '047 patent, col. 6, ll. 3–4. Hester concedes that the term "high humidity steam" is not narrower than this limitation in original claim 1. In fact, with respect to the claim construction issue, Hester argues that the limitation in original claim 1 is but one example of "high humidity steam." Accordingly, the use of the term "high humidity steam" does not save the reissue claims from the recapture rule.

▮ The term "spiral conveyance path" is also not materially limiting. This term appears explicitly in asserted reissue claims 28, 32, 75, and 76 of the '259 reissue patent; it does not appear explicitly in the other reissue claims asserted. Original claim 1 includes a corresponding limitation, namely, "means passing said conveyor belt through said housing. . . ." This is a so-called means-plus-function clause drafted pursuant to 35 U.S.C. § 112 ¶ 6 (1994).[7] According to § 112 ¶ 6, the clause is to be construed to "cover the corresponding structure . . . described in the specification and equivalents thereof." The only corresponding structure described in the specification (more properly, the written description of the patent) passes the conveyor belt through a spiral path. See '047 patent, col. 4, l. 64 to col. 5, l. 8. Thus, the explicit recitation of a "spiral conveyance path" in some of the asserted reissue claims does not materially narrow those claims. Indeed, Hester does not explain how the explicit recitation of a spiral conveyance path—which is present in prior art cookers cited by the examiner during the prosecution of the original patent—materially narrows these claims. In sum, neither alone nor together do the terms "high humidity steam" and "spiral conveyance path" materially narrow the claims.

Furthermore, the "spiral conveyance path" and "high humidity steam" limitations are not aspects of the invention that were overlooked during prosecution of the original patent. To the contrary, as just explained, these aspects were included in original claim 1. Additionally, with regard to the "spiral conveyance path" limitation, original dependent claim 12 explicitly recites "a spiral path." '047 patent, col. 6, l. 60. In prosecuting the original patent, Williams pointed out these features in an attempt to overcome the Examiner's obviousness rejection. Hester cannot now argue that Williams overlooked these aspects during the prosecution of the original patent application. In conclusion, this is not a case which involves the addition of material limitations that overcome the recapture rule.

In effect, Hester, through eight years of reissue proceedings, prosecuted Williams' original patent application anew, this time placing greater emphasis on aspects previously included in the original patent claims and removing limitations repeatedly relied upon to distinguish the prior art and described as "critical" and "very material" to the patentability of the invention. The reissue statute is to be construed liberally, but not that liberally. The realm of corrections contemplated within § 251 does not include recapturing surrendered subject matter, without the addition of materially-narrowing

---

7. Use of the word "means" in a claim clause triggers a presumption that § 112 ¶ 6 applies. *See York Prods., Inc. v. Central Tractor Farm & Family Ctr.,* 99 F.3d 1568, 1574, 40 USPQ2d 1619, 1623–24 (Fed.Cir.1996). The presumption can be overcome if the clause recites sufficient structure. *See id.* The clause at issue here recites no structure for performing the function of passing the conveyor belt through the housing. Accordingly, § 112 ¶ 6 unquestionably applies.

limitations, in an attempt to 'custom-fit' the reissue claims to a competitor's product.

No doubt if two patent attorneys are given the task of drafting patent claims for the same invention, the two attorneys will in all likelihood arrive at somewhat different claims of somewhat different scope. And such differences are even more likely when, as here, the second attorney drafts the new claims nearly a decade later and with the distinct advantage of having before him the exact product offered by the now accused infringer. This reality does not justify recapturing surrendered subject matter under the mantra of "failure to appreciate the scope of the invention." The circumstances of the case before us simply do not fit within the concept of "error" as contemplated by the reissue statute. See Mentor, 998 F.2d at 996, 27 USPQ2d at 1525 ("Error under the reissue statute does not include a deliberate decision to surrender specific subject matter in order to overcome prior art, a decision which in light of subsequent developments in the marketplace might be regretted.").

With respect to the recapture issue, there are no underlying material facts as to which there is a genuine issue in dispute. The original patent's prosecution history, on which we rely, is before us and undisputed. All that remains is the ultimate legal conclusion as to whether the asserted reissue claims fail to meet the "error" requirement because the claims impermissibly recapture surrendered subject matter. See id. at 994, 998 F.2d 992, 27 USPQ2d at 1524 (stating that whether the "error" requirement has been met is a legal conclusion). For the reasons explained above, we conclude as a matter of law that the asserted reissue claims fail in this regard. Summary judgment of invalidity of the asserted reissue claims under § 251 is called for. Accordingly, we affirm the district court's entry of summary judgment.

B

■ As an alternative basis for holding the asserted reissue claims invalid, the district court concluded that the reissue claims do not meet the "original patent" clause of § 251 ¶ 1, which requires that the reissue patent be "for the invention disclosed in the original patent." Hester, 963 F.Supp. at 1412. In reaching this conclusion, the court interpreted the "original patent" clause as requiring an "objective" intent, manifested in the original patent, to claim the invention as claimed in the reissue patent. Id. The court based this interpretation on the Supreme Court's statement in U.S. Industrial Chemicals, Inc. v. Carbide & Carbon Chemicals Corp., 315 U.S. 668, 676, 62 S.Ct. 839, 843–44, 86 L.Ed. 1105 (1942), that there was an objective intent requirement under the predecessor reissue statute, 35 U.S.C. § 64 (1964), which required that the reissue patent be "for the same invention." Id. at 1413.

Based on this construction of the "original patent" clause, the district court framed the issue as, "whether the 047 patent manifests an objective intent to cover ovens that utilize heat sources other than steam, and have less than two steam sources." Id. The district court concluded that the asserted reissue claims failed to meet this test and thus were invalid under the "original patent" clause. Id. at 1413–15. On appeal, the parties focus on whether the "original patent" clause embodies the requirement of an objective intent to claim.

This court squarely addressed the issue in Amos, 953 F.2d at 616, 21 USPQ2d at 1273. The Amos court held that § 251 does not include a separate requirement of an objective intent to claim. 953 F.2d at 618–19, 21 USPQ2d at 1275–76. Rather, the court concluded: "the essential inquiry under the 'original patent' clause of § 251 ... is whether one skilled in the art, reading the specification, would identify the subject matter of the new claims as invented and disclosed by the patentees." Id. at 618, 953 F.2d 613, 21 USPQ2d at 1275. The court noted that this inquiry is analogous to the "written description" requirement of 35 U.S.C. § 112 ¶ 1 (1994). Id. The court further stated that, to the extent the construct of an objective intent to claim is useful, it is "only one factor that sheds light" on whether the "original patent" clause of § 251 is satisfied. Id. at 619 & n. 2, 21 USPQ2d at 1275–76 & n. 2 (quoting In re Hounsfield, 699 F.2d 1320,

1323, 216 USPQ 1045, 1047–48 (Fed.Cir. 1983)).

With regard to the Supreme Court's opinion in *U.S. Industrial*, 315 U.S. 668, 62 S.Ct. 839, 86 L.Ed. 1105, the *Amos* court noted that that case was decided under the predecessor reissue statute which required reissue claims to be for the "same invention," and concluded that *U.S. Industrial* does not now mandate a separate "objective intent to claim" requirement. *Id.* The *Amos* court noted that this court reached the same conclusion eight years earlier in *Hounsfield*, 699 F.2d at 1323, 216 USPQ at 1047–48. *Id.*

Thus, the district court's conclusion that the "original patent" clause of § 251 was not satisfied based on an "objective intent to claim" requirement was in error. Stein does not contend that the test set forth in *Amos* for the "original patent" clause—*i.e.*, whether one skilled in the art would identify the subject matter of the reissue claims as invented and disclosed by the patentee—is not met by the asserted reissue claims. Rather, Stein relies entirely on its assertion that there is an "objective intent to claim" requirement and that that requirement is not met. However, we need not resolve this issue further, having already concluded that the asserted reissue claims are invalid for failing to meet the "error" requirement of § 251.

### III

■ Finally, Stein presents to us the question of whether the district court proper-ly construed the claim term "high humidity steam." It is not immediately apparent whether this issue is properly before us. The district court did not construe the term in conjunction with a final judgment, such as a summary judgment of noninfringement or invalidity. Rather, the district court issued an oral ruling on the matter in preparation for trial. However, the district court having held the asserted claims invalid on summary judgment, which we here affirm, there can be no question of liability and hence the claim construction issue is moot. Therefore, we need not decide whether Stein's appeal of the claim construction is proper, and if so, whether the district court's construction was correct.

### CONCLUSION

We affirm the grant of summary judgment of invalidity of the asserted reissue claims for failure to comply with 35 U.S.C. § 251 ¶ 1. Stein's cross-appeal is dismissed.

### COSTS

Each party shall bear its own costs.

*AFFIRMED.*