**VOICE CAPTURE, INC., Plaintiff,**

v.

**INTEL CORPORATION and Nuance Communications, Inc., Defendants.**

No. 4:04–CV–40340.

United States District Court, S.D. Iowa, Central Division.

Dec. 2, 2004.

Thomas D Waterman, Lane & Waterman LLP, Davenport, IA, Raymond P Niro, Robert P Greenspoon, William W Flachsbart, Niro Scavone Haller & Niro, Chicago, IL, for plaintiffs.

Thomas D Hanson, Lu Ann White, Hanson Bjork & Russell LLP, Des Moines, IA, John Allcock, John Giust, Randall E Kay, Gray Cary Ware & Freidenrich LLP, San Diego, CA, Megan Whyman Olesek, Gray & Cary Firm, E Palo Alto, CA, for Intel Corp., defendant.

Helen C Adams, Tracy L Deutmeyer, Dickinson Mackaman Tyler & Hagen PC, Des Moines, IA, Ryan J Marton, J David Hadden, Fedwick & West LLP, Mountain View, CA, for Dialogic Corp., Nuance Communications, Inc., defendants.

Thomas D Waterman, Lane & Waterman LLP, Davenport, IA, Raymond P Niro, Robert P Greenspoon, William W Flachsbart, Niro Scavone Haller & Niro, Chicago, IL, for Voice Capture, Inc., defendants.

## ORDER

GRITZNER, District Judge.

This matter is before the Court on Motion for Summary Judgment by Defendant Nuance Communications, Inc., filed August 20, 2004. Defendant Intel Corporation joined in this motion for summary judgment on August 27, 2004. Hearing was held on the motion on October 19, 2004. Attorney J. David Hadden appeared for Nuance. Attorneys John Allcock, Thomas Hanson, and Edward Sikorski appeared for Intel. Attorneys Thomas Waterman and Frederick Laney appeared on behalf of Voice Capture. The matter is now fully submitted for review. For the reasons discussed below, this motion for summary judgment is **denied**.

## SUMMARY OF MATERIAL FACTS

At issue in this case is a reissue patent, U.S. Patent No. Re. 34,587 (the " '587 patent" or "reissue patent"). The '587 patent, reissued on April 19, 1994, is a reissue of an original patent, U.S. Patent No. 4,866,-756 (the " '756 patent" or "original patent"), issued on September 12, 1989. The '756 patent was replaced by the '587 reissue patent pursuant to 35 U.S.C. § 251. The invention the patents protect is a computerized system and method for collecting input information from a person connected by telephone to the automated computerized data collection system. This system collects data from the caller via voice responses and touch-tone input responses. In assessing the accuracy of voice responses, the invention does not perform speech analysis; rather, it times the duration of a voice response to determine, based on the length of the response, whether a correct and complete response has been given. The reissue patent and the original patent have the same written abstract and differ only with respect to what is claimed. Voice Capture, Inc. ("Voice Capture"), owns the patents,[1] and Michael Crane and Neil Sullivan are the sole listed inventors.

On April 6, 2004, Voice Capture filed a Complaint in the United States District Court for the Southern District of Iowa alleging that Defendants Intel Corporation ("Intel"), Dialogic Corporation ("Dialogic"),[2] and Nuance Communications Inc.

1. Voice Capture obtained the patents from its predecessor company, Call–It Co.

2. Dialogic was acquired by Intel in 1999. Intel agreed to assume all liability for any and all acts of infringement of Dialogic with respect to the '587 patent; therefore, upon the consent of the parties, on August 18, 2004, Dialogic was dismissed from the case with prejudice.

("Nuance"), were infringing on the '587 patent. Specifically, Voice Capture alleges that Defendants have at the very least infringed on system claim twelve and method claim seventeen of the '587 patent through the manufacture, use, importation, sale, and/or offer for sale of interactive voice response equipment, software and/or services.

Defendants Nuance and Intel ("Defendants") each deny that they are infringing on the '587 patent. Defendants contend that the reissue patent is invalid for failing to meet one or more of the conditions of patentability under 35 U.S.C. § 101, et. seq. Defendants also claim that the '587 patent is invalid based on the recapture rule and further affirmatively defend by asserting theories of equitable estoppel, laches, patent marking, and time limitation on damages. Both Nuance and Intel have filed two counterclaims against Voice Capture. First, Defendants seek a declaratory judgment that the '587 patent is invalid or unenforceable. Second, Defendants seek a declaratory judgment that they are not infringing the '587 patent.

On August 20, 2004, Nuance filed a Motion for Summary Judgment of Invalidity of the Patent–in–Suit. Nuance states that claims eleven through eighteen of the '587 patent are invalid under 35 U.S.C. § 251, alleging that these claims impermissibly recapture subject matter that was deliberately surrendered during the prosecution of the original patent. On August 27, 2004, Intel joined the Nuance motion for summary judgment, adopting the Statement of Material Facts and Appendix provided by Nuance.

Voice Capture resists Defendants' motion for summary judgment. Voice Capture asserts that the recapture rule is inapplicable, claiming that non-prior art rejections cannot lead to surrender under the recapture rule. Voice Capture further asserts that genuine issues of material fact and expert testimony preclude summary judgment. Finally, Voice Capture contends that Defendants cannot seek a finding that the original patent claims are invalid.

## APPLICABLE LAW AND DISCUSSION

### I. Motion for Summary Judgment

■ Pursuant to 35 U.S.C. § 251 a patentee may apply for the reissue of a patent, if the original patent is partially or wholly inoperative or invalid due to an error or mistake made, absent deceptive intent, during the prosecution of the original patent.

> Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

35 U.S.C. § 251. Defendants contend that the asserted claims in the '587 patent, which was reissued pursuant to 35 U.S.C. § 251, violate the recapture rule and are therefore invalid. "The recapture rule prevents a patentee from regaining through reissue the subject matter that he surrendered in an effort to obtain allowance of the original claims." *Pannu v. Storz Instruments, Inc.,* 258 F.3d 1366, 1370–71 (Fed.Cir.2001) (quoting *In re Clement,* 131 F.3d 1464, 1468 (Fed.Cir. 1997)) (quotations omitted); *see also Vectra Fitness, Inc. v. TNWK Corp.,* 162 F.3d

1379, 1384 (Fed.Cir.1998). "Under [the recapture] rule, claims that are broader than the original patent claims in a manner directly pertinent to the subject matter surrendered during prosecution are impermissible." *Hester Indus., Inc. v. Stein, Inc.*, 142 F.3d 1472, 1482 (Fed.Cir.1998) (quoting *Clement*, 131 F.3d at 1468) (quotations omitted); *see also Pannu*, 258 F.3d at 1371 ("Reissued claims that are broader than the original patent's claims in a manner directly pertinent to the subject matter surrendered during prosecution [of the original patent] are impermissible."); *In re Clement*, 131 F.3d at 1468. "The rule is rooted in the 'error' requirement in that such a surrender is not the type of correctable 'error' contemplated by the reissue statute." *Hester*, 142 F.3d at 1480.

Voice Capture contends that the recapture rule is inapplicable in the present case, arguing that violation of the recapture rule only occurs when the surrender of claim scope during the original prosecution was in response to a prior art rejection. Voice Capture claims that the patent examiner made rejections based upon an ultimately withdrawn lack-of-enablement argument under 35 U.S.C. § 112, rejections which Voice Capture assert are based on the content of the specification and the form of the claims, not on prior art. Voice Capture argues that prior art rejections must be made under different statutory provisions, namely 35 U.S.C. §§ 102 and 103, and that Defendants have never asserted that any of the prior art rejections made during the prosecution support their recapture theories. Voice Capture contends that because the recapture rule is not applicable to the present case, summary judgment on that ground is inappropriate.

Defendants argue that it does not matter whether the substantive rejection was grounded in the prior art or in a failure of the specification to adequately teach what was being claimed. Defendants claim that amendments made for patentability that trigger estoppel are not limited to those made to distinguish over the prior art but also include amendments made to meet other statutory requirements including the requirements of 35 U.S.C. § 112, which includes enablement.

■ The Court must first determine whether the rejections and any resulting surrendered subject matter at issue pertain to prior art. "[P]rior art includes any relevant knowledge, acts, descriptions and patents which pertain to, but pre-date, the invention in question." *Mooney v. Brunswick Corp.*, 663 F.2d 724, 733 (7th Cir. 1981) (citing 35 U.S.C. § 102).

The Reissue Declaration stated that the original patent was partly inoperative or invalid due to error without deceptive intent, asserting the inventor claimed less than he had a right to claim in the '756 patent. First, the Reissue Declaration stated that the preamble of certain independent claims failed to more broadly recite the invention covered thereunder.

The preamble of claim 1 of the '756 patent states:

A computerized communications system for collecting input information from responses including voice responses provided by a person through a telephonic dialogue between the person and said system, comprising ...

The preamble of claim 2 of the '756 patent states:

A computerized communications system for collecting input information from responses including voice responses of a person through a telephonic dialogue between the person and said system, comprising ...

The preamble of claim 6 of the '756 patent states:

A computerized communications system for collecting input information from re-

sponses including voice responses provided by a person through a telephonic dialogue between the person and the system, comprising . . .

The preamble of claim 8 of the '756 patent states:

A method for collecting input information from responses including voice responses provided by a person through a telephonic dialogue between the person and a computerized communication system comprising the steps of . . .

The preamble of claim 9 of the '756 patent states:

A method for collecting input information from responses including voice responses of a person through a telephonic dialogue between the person and a computerized communication system comprising the steps of . . .

The preambles of claims 1, 2, and 6 were broadened in the reissue patent by inserting the phrase "with the system being capable of receiving only voice responses from the person" before "compromising". The preambles of claims 8 and 9 were broadened in the reissue patent by inserting the phrase "with a system operating according to the method being capable of receiving only voice responses from the person" before "compromising". The phrase "including voice responses" was deleted from the preambles of claims 1, 2, 6, 8, and 9. These amendments broadened the original claim by adding a system capable of receiving voice responses only, in addition to a system capable of receiving voice responses and touch-tone responses.

Second, the Reissue Declaration stated that certain independent claims failed to more broadly recite the feature regarding the response that the person provides. The pertinent part of claim 1 of the '756 patent states:

. . . for determining if the person has provided a response and if the response is of sufficient duration and if not, for

generating audio signals giving the person the option to selectively verify, correct, edit and add to the input information . . .

The pertinent part of claim 2 of the '756 patent states:

. . . to determine if the person has provided a response and if the response is of sufficient duration and if not, for providing a selected audio signal to said audio means to provide the person with an audio message signal to selectively request more of said input information to complete said dialogue . . .

The pertinent part of claim 6 of the '756 patent states:

. . . to determine if the person has provided a response and if the response is of sufficient duration and if not, for providing a selected audio signal to the audio means to provide the person with an audio message signal to selectively request more of said input information to complete the dialogue . . .

The pertinent part of claim 8 of the '756 patent states:

. . . determining if the person has provided a response and if the response is of sufficient duration and if not, outputting selected audio message signals provided by the computer means, said step of outputting further including generating audio signals giving the person an option to selectively verify, correct, edit and add to the input information . . .

The pertinent part of claim 9 of the '756 patent states:

. . . to determine if the person has provided a response and if the response is of sufficient duration and if not, providing a selected audio signal to provide the person with an audio message signal to selectively request more of the input information to complete the dialogue . . .

The phrase "if the person has provided a response and if the response is of sufficient duration and if not ..." was deleted from claims 1, 2, 6, 8, and 9. In its place, the phrase "... if the person has provided a complete response and if it is determined that the response is not complete ..." was inserted.

Third, the Reissue Declaration stated that claim 9 failed to more broadly claim the "collecting and analyzing" step. The pertinent part of claim 9 of the '756 patent states:

collecting the input information and analyzing the input information to determine if the person has provided a response and if the response is of sufficient duration and if not, providing a selected audio signal to provide the person with an audio message signal to selectively request more of the input information to complete the dialogue, and further comprising the step of providing selected portions of the input information to the person during the dialogue to enable the person to determine the accuracy of the input information.

Claim 9 was amended to read:

collecting the modified form of the input information in digital means from the person; and

analyzing the input information for determining if a response exceeds a preset maximum time limit or a period of silence in the response exceeds a preset minimum time limit and further evaluating the input information to determine if the person has provided a complete response and if it is determined that the response is not complete, providing a selected audio signal to provide the per-

son with an audio message signal to selectively request more of said input information to complete the dialogue, and further comprising the step of providing selected of said input information stored in said digital storage means to the person during the dialogue to enable the person to determine the accuracy of the input information.

These modifications were incorporated in Claims 11–18 and added to the '587 reissue patent.[3] Defendants state that for the purposes of their summary judgment motion, the modified element regarding subject matter related to how the invention determines whether the caller has finished his response and the completeness of that response was the only material change made during reissue that significantly broadened the claims.

During the prosecution of the original patent, in an official action dated January 11, 1989, the patent examiner rejected claims 6, 21–24, 36, and 43–45, which covered computer analysis to determine completeness, as being based upon a non-enabling disclosure in violation of 35 U.S.C. § 112. In addressing these rejections, the examiner wrote:

The written description broadly discloses checking for completeness and correctness and checking for error and evaluating information. The description does not explain in detail how to perform these two functions. The specification also disclosed tone data input. Analysis of tone data input appears within the level of skill in the art. Analysis of voice responses, however, is much more complicated. How do you determine if a voice response is com-

---

**3.** Claim 11 of the '587 corresponds to claim 1 of the '756; claim 12 of the '587 corresponds to claim 2 of the '756; claim 13 of the '587 corresponds to claim 3 of the '756; claim 14 of the '587 corresponds to claim 6 of the '756; claim 15 of the '587 corresponds to claim 7 of the '756; claim 16 of the '587 corresponds to claim 8 of the '756; and claims 17 and 18 of the '587 corresponds to claim 9 of the '756.

plete? How do you determine if a voice response is correct? How do you detect errors in voice responses and analyze responses to determine their usefulness? Absent a much more detailed description of how to analyze voice responses the disclosure is not enabling ...

In response to this rejection, on April 4, 1989, the patentee responded by stating that the invention had means to check for certain types of voice responses, pointing to examples in the preferred embodiment. The patentee stated,

> The written description recites the type of steps which are performed by the invention in checking for completeness and correctness and in checking for errors and evaluating errors. Although the invention does not do a speech analysis of the input responses in order to determine completeness and correctness, and the disclosure never so states, the invention does check for certain types of responses, for example, a lack of a response and a response of insufficient length, and allows the user of the system to verify the input information, thereby allowing for the checking of correctness and completeness. With respect to the checking of errors, the invention checks for certain predetermined types of errors, and if these predetermined types of errors occur, outputs an audio message signal alerting the user of the errors.

The patentee went on to state that in order to clarify these features, claim 6 and claim 43 had been amended to refer specifically to the determination if a response had been provided or was of sufficient length. Claims 21, 24, 36, 44, and 45 were amended to specify the results of the evaluation of errors, indicating that selected audio message signals are provided to the person to enable correction of the errors by the person, branching to an operator,

or termination of the connection. In light of these amendments, on May 4, 1989, the examiner noted his withdrawal of the lack of enablement rejection to claim 6 and claim 43 and allowed those claims.[4] As part of the amendments made to overcome the enablement rejection, the patentee reaffirmed his assertion that the invention did check for completeness and correctness and in response to the examiner's concerns clarified how the system was able to perform these two functions by providing a more detailed explanation regarding how the functions were performed by the invention.

■ The parties do not dispute that the material Defendants allege Voice Capture surrendered does not pertain to prior art and a review of the record reveals that the amendments at issue do not relate to previous prior art rejections. The Court must therefore address whether the recapture rule applies in the context of amendments made in response to rejections based on grounds other than prior art.

There is apparent though not dispositive support for the proposition that the recapture rule only applies where the surrender of claim scope during the original prosecution was in response to a prior art rejection. "[T]he recapture rule 'prevents an applicant from recapturing through reissue [subject] matter surrendered to overcome a rejection based on prior art.'" *AT & T Corp. v. Microsoft Corp.*, 2004 WL 292321, *7, 2004 U.S. Dist. LEXIS 2192, *22 (S.D.N.Y.2004) (quoting *In re Doyle*, 293 F.3d 1355, 1358 (Fed.Cir.2002)). In *In re Doyle*, the Federal Circuit noted that recapture "prevents an applicant from recapturing through reissue matter surrendered to overcome a rejection *based on prior art*". *In re Doyle*, 293 F.3d at 1358 (emphasis added). The Federal Circuit in *In re Doyle* noted that the Board of Patent

---

4. Claims 6 and 43 became the independent claims of the original patent.

Appeals expressly reversed an examiner's application of the recapture rule to a 35 U.S.C. § 112 rejection where the Board found that the recapture doctrine did not apply because the pertinent claims were cancelled without prejudice in response to a *restriction* requirement, not to overcome a rejection based on *prior art. Id.*

In *Dethmers Mfg. Co., Inc. v. Auto. Equip. Mfg. Co.,* the district court found that because the claim language in the reissue patent was not added to surrender subject matter in an effort to overcome a prior art rejection, the recapture rule was inapplicable. *Dethmers Mfg. Co., Inc. v. Auto. Equip. Mfg. Co.,* 23 F.Supp.2d 974, 1018 (N.D.Iowa 1998). Citing to this portion of *Dethmers I,* in reviewing the claims on appeal, the Federal Circuit agreed with the district court "that Automatic's arguments regarding the nature of the errors corrected in the reissue patent and the lack of identity of invention between the reissue claims and the original patent claims do not withstand scrutiny." *Dethmers Mfg. Co., Inc. v. Auto. Equip. Mfg. Co.,* 272 F.3d 1365, 1376 (Fed.Cir.2001).

In denying a motion for reconsideration because there had been no change in controlling authority regarding the scope of the "recapture rule" since the Federal Circuit's decision in the case, the district court found,

> First, there is no doubt that this court actually, and expressly, decided the question of whether or not the "recapture rule" was applicable to the [reissue] patent, and concluded that the rule was not applicable. *See Dethmers I,* 23 F.Supp.2d at 1014–19. Nor can there be any doubt that the Federal Circuit Court of Appeals considered, and rejected, Automatic's arguments concerning application of the "recapture rule," albeit summarily. The appellate court explained that it had "carefully considered and reject[ed]" Automatic's arguments

"regarding the nature of the errors corrected in the reissue patent," *see Dethmers App. I,* 272 F.3d at 1376, which arguments, both in this court and before the appellate court, had centered on applicability of the "recapture rule." *See Dethmers I,* 23 F.Supp.2d at 1014–19; and compare Dethmers' Exhibits In Support Of Resistance, Exhibit A (excerpt from Automatic's brief on appeal). Indeed, the appellate court cited precisely the portion of this court's decision discussing the "recapture rule" as its basis for rejecting Automatic's "errors corrected argument on appeal". *See Dethmers App. I,* 272 F.3d at 1376 ("[W]e agree with the district court that Automatic's arguments regarding the nature of the errors corrected in the reissue patent ... do not withstand scrutiny. *See, e.g., Dethmers I,* 23 F.Supp.2d at 1014–20."). Under the circumstances, express mention of the "recapture rule" in the appellate decision was not required to demonstrate that the appellate court had actually considered and decided the question of applicability of the "recapture rule" to the [reissue] patent.

*Dethmers Mfg. Co., Inc. v. Automatic Equipment Mfg. Co.,* 299 F.Supp.2d 903, 914 (N.D.Iowa 2004).

In discussing the application of the recapture rule, the Federal Circuit has stated that,

> (1) [I]f the reissue claim is as broad as or broader than the canceled or amended claim in all aspects, the recapture rule bars the claim; (2) if it is narrower in all aspects, the recapture rule does not apply, but other rejections are possible; (3) if the reissue claim is broader in some aspects, but narrower in others, then: (a) if the reissue claim is as broad as or broader in an aspect germane to a prior art rejection, but narrower in an-

other aspect completely unrelated to the rejection, the recapture rule bars the claim; (b) *if the reissue claim is narrower in an aspect germane to prior art rejection, and broader in an aspect unrelated to the rejection, the recapture rule does not bar the claim,* but other rejections are possible.

*Clement,* 131 F.3d at 1470 (emphasis added); *see also Dethmers III,* 299 F.Supp.2d at 919; *Ex Parte Eggert,* 67 U.S.P.Q.2d 1722, 1731–32, 2003 WL 21542454, *20 (Bd. Pat.App & Interf.2003). The emphasized language indicates that the recapture rule does not bar modifications unrelated to prior art which broaden a claim.

The Patent Office Manual of Patent Examining Procedure has an entire section devoted to evaluating potential recapture rule violations. The Manual of Patent Examining Procedure states,

> If an original patent claim limitation now being omitted or broadened in the present reissue application was originally relied upon by applicant in the original application to make the claims allowable *over the art,* the omitted limitation relates to subject matter previously surrendered by applicant.

Manual of Patent Examining Procedure § 1412.02(I)(B)(1)(A) (emphasis added). In addition, the decisional flow chart utilized by the Patent Office in analyzing potential recapture violations demonstrates that the Patent Office views recapture solely in the context of prior art rejections. The Patent Office's own procedures dictate that the recapture rule does not apply if the amendments in the original patent application did not pertain to prior art and substantial deference is to be given to the Patent Office's rules governing procedures. *See Stevens v. Tamai,* 366 F.3d 1325, 1333–1334 (Fed.Cir.2004) (substantial deference is given to the Patent Office's rules governing procedures); *Custom Computer Serv., Inc. v. Paychex Prop.,* 337 F.3d 1334, 1336 (Fed.Cir.2003) (substantial deference is given to the Patent Office's interpretation of its own regulations).

Defendants, citing *Hester,* argue that the recapture rule embodies the notion of estoppel and that both the Federal Circuit and the Supreme Court have held that amendments made for patentability that trigger estoppel are not limited to those made to distinguish over the prior art, but also include amendments made to meet other statutory requirements, including the requirements of 35 U.S.C. § 112, which includes enablement. *See Hester,* 142 F.3d at 1481 ("the recapture rule is based on principles of equity and therefore embodies the notion of estoppel.").

"When a claim is narrowed for *any* reason related to the statutory requirements for a patent, prosecution history estoppel will arise with respect to the amended claim limitation and will bar an application of the doctrine of equivalents with respect to that claim limitation." *Dethmers II,* 272 F.3d at 1377 (emphasis added).

> Prosecution history estoppel requires that the claims of a patent be interpreted in light of the proceedings in the PTO during the application process. Estoppel is a "rule of patent construction" that ensures that claims are interpreted by reference to those "that have been cancelled or rejected." The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes. When, however, the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent.

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 535 U.S. 722, 733–734, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002) (citation omitted). "Like the recapture rule, prosecution history estoppel prevents a patentee from regaining subject matter surrendered during prosecution in support of patentability." *Hester,* 142 F.3d at 1481. Defendants correctly argue that the recapture rule embodies the notion of estoppel and that amendments that trigger estoppel are not limited to those made to distinguish over the prior art, but also include amendments made to meet other statutory requirements. However, this Court is convinced the recapture rule is a narrow rule residing within the broader concept of estoppel, functioning only in the specific context of prior art rejections. Thus, while amendments that trigger estoppel are not limited to those made to distinguish over prior art, amendments that trigger the recapture rule are.

Defendants cite to *Tee–Pak, Inc. v. St. Regis Paper Co.* to support their assertion that recapture applies regardless of whether the rejections were based on prior art or other grounds. In *Tee–Pak,* the Sixth Circuit stated, "[the recapture] rule applies regardless of whether the claims were broadened or narrowed, or whether the rejection was based on prior art or other grounds." *Tee–Pak, Inc. v. St. Regis Paper Co.,* 491 F.2d 1193, 1199 (6th Cir.1974). In support of this principle, the Sixth Circuit cited to *Union Switch & Signal Co. v. Louisville Frog, Switch & Signal Co. Id.* The court in *Union Switch* stated, "[w]e are not concerned with whether the reissue claims were broadening or narrowing claims." *Union Switch & Signal Co. v. Louisville Frog, Switch & Signal Co.,* 73 F.2d 550, 552 (6th Cir.1934). The court never held or otherwise offered that recapture applied regardless of "whether the rejections were based on prior art or other grounds," and in fact the court concluded that the reissue patent in that case was void because the subject matter was specifically abandoned based on prior art, not inadvertence or mistake. *Id.* In addition, since its creation in 1982, the Federal Circuit has consistently ignored *Tee–Pak*'s expression of recapture and applied the doctrine solely in the context of prior art rejections. *See Pannu,* 258 F.3d at 1371 (finding the recapture rule barred the patentee from claiming the precise limitation he added to overcome prior art rejections); *Hester,* 142 F.3d at 1480–82 (finding patentee's repeated arguments regarding the limitations constituted an admission that the limitations were necessary to overcome the prior art and the reissue claims impermissibly recaptured surrendered subject matter); *Clement,* 131 F.3d at 1470–72 (finding the broadening and narrowing of the reissue claims related to prior art rejections); *Mentor Corp. v. Coloplast, Inc.,* 998 F.2d 992, 996 (Fed.Cir.1993) (because Mentor had amended its claims to overcome prior art, it was precluded from recapturing what it earlier conceded). The reported cases involving the recapture rule consistently apply the rule only in the context of prior art rejections, and this Court must be equally guided by the absence of available authority applying the recapture rule outside the context of prior art rejections.

An examination of the relevant case law and the Patent Office procedures leads to the conclusion that the recapture rule applies only to reissue claims that are broader than claims in the original patent that were cancelled to define the claims over prior art. Because the reissue claims at issue in the present case do not pertain to original claims that were cancelled or rejected based on prior art, the recapture rule is inapplicable.

## II. Motion to Strike

On August 27, 2004, Nuance filed a Motion to Strike Declaration of Joseph

McGlynn, a patent agent with Patent and Trademark Services and a former patent examiner for the PTO, submitted in support of the Voice Capture opposition to Defendants' motion for summary judgment. Nuance asserts McGlynn's declaration is irrelevant, improper, and must be disregarded for purposes of summary judgment. "[A] patent holder seeking to establish the reason for an amendment must base his arguments solely upon the public record of the patent's prosecution, i.e., the patent's prosecution history. To hold otherwise—that is, to allow a patent holder to rely on evidence not in the public record to establish a reason for an amendment—would undermine the public notice function of the patent record." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558, 586 (Fed.Cir.2000). Nuance contends that McGlynn's declaration consists entirely of purported expert opinion interpreting the prosecution history of the patents-in-suit, and that the Federal Circuit has undisputedly held that extrinsic evidence should not be considered when interpreting a patent's prosecution history. Nuance argues that because extrinsic evidence is irrelevant, McGlynn's declaration is inadmissible and should not be considered by the Court.

Voice Capture opposes the motion to strike. Voice Capture contends that it is offering McGlynn's declaration not to establish the reason for the claim amendments, but to show that the reissue examiner's actions in not rejecting reissue claims 11–18 under the recapture rule were consistent with Patent Office practice and procedure. Voice Capture asserts that McGlynn's declaration establishes what Patent Office practice and procedure is, what the patent reissue examiner did in this case, and whether the reissue examiner's actions were consistent with Patent Office practice and procedure.

Under Federal Rule of Civil Procedure 56(c), a party may submit affidavits in resistance to a motion for summary judgment only if the affidavit is admissible. *Duluth News–Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1098 (8th Cir.1996). Evidence regarding the Patent Office's practice and procedure is relevant to issues other than the reasoning for the amendments, and numerous cases have permitted such evidence at trial. *See Bausch & Lomb, Inc. v. Alcon Laboratories, Inc.*, 79 F.Supp.2d 252, 256 (W.D.N.Y.2000) ("PTO procedures are foreign to the average person, and it may be helpful to the jury to hear someone experienced in those procedures explain how they operate in terms that a layperson can understand."); *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 334 F.Supp.2d 197 (N.D.N.Y.2004) (denying motion to strike patent expert's reports); *THK Am., Inc. v. NSK, Ltd.*, 917 F.Supp. 563, 576 (N.D.Ill.1996) (permitting expert to testify about PTO procedures and patents in general); *Applied Materials, Inc. v. Advanced Semiconductor Materials of Am. Inc.*, 1995 WL 261407, *4 (N.D.Cal.1995) (noting that some general evidence about the PTO and its procedures was necessary at trial to understand the Patent Office's function); *Sam's Wines & Liquors, Inc. v. Wal–Mart Stores, Inc.*, 1994 WL 529331, *9 (N.D.Ill.1994) (permitting expert to testify about the technical aspects of applying for and obtaining a federal trademark registration).

■ Although the Court has considerable discretion in ruling on a motion to strike, *Nationwide Ins. Co. v. Cent. Missouri Elec. Coop., Inc.*, 278 F.3d 742, 748 (8th Cir.2001), "the determinative question is whether an affidavit in [resistance] of a motion for summary judgment constitutes a pleading". *Big Stone Broad., Inc. v. Lindbloom*, 161 F.Supp.2d 1009, 1013 (D.S.D.2001). An affidavit does not consti-

tute a pleading, therefore a motion to strike is not the proper method upon which to challenge an affidavit. *See id.* (citing various case law and agreeing with the weight of authority which suggests affidavits are not pleadings). The Court therefore views the argument in favor of the motion to strike more a challenge to the weight to be accorded the challenged declaration at this stage of the litigation, rather than to characterize the declaration as the type of material to be stricken. Because the Court determines the evidentiary value of the declaration before considering it in conjunction with the motion for summary judgment, it is unnecessary to eliminate the challenged declaration through a motion to strike. Accordingly, the motion to strike is denied.

## CONCLUSION

The recapture rule is inapplicable to the circumstances present in this case. Defendants' Motion for Summary Judgment (Clerk's No. 33) is therefore denied. For the reasons discussed above, Nuance's Motion to Strike (Clerk's No. 54) is **denied**.

**IT IS SO ORDERED.**